1  Dean Gazzo Roistacher LLP
   Mitchell D. Dean, Esq. (SBN 128926)
2  Lee H. Roistacher, Esq. (SBN 179619)
   Heather E. Paradis, Esq. (SBN 276650)
3  440 Stevens Avenue, Suite 100
   Solana Beach, CA  92075
4  Telephone:  (858) 380-4683
   Facsimile:  (858) 492-0486
5  E-mail:      mdean@deangazzo.com
                lroistacher@deangazzo.com
6               hparadis@deangazzo.com

7  Attorneys for Defendant
   City of Chula Vista and Roxana Kennedy
8

9              **UNITED STATES DISTRICT COURT**

10           **SOUTHERN DISTRICT OF CALIFORNIA**

11  DIANA C. WATTS and ODEN H.          Case No.: 3:21-cv-00581-CAB-WVG
    WATTS, a minor, by and through his
12  Guardian Ad Litem, DIANA C.         **MEMORANDUM OF POINTS AND**
    WATTS,                              **AUTHORITIES IN SUPPORT OF**
13                                      **MOTION TO DISMISS**
                 Plaintiffs,            **PLAINTIFF'S FIRST AMENDED**
14                                      **COMPLAINT BY DEFENDANTS**
          v.                            **CITY OF CHULA VISTA AND**
15                                      **ROXANA KENNEDY**
    CITY OF CHULA VISTA,
16  ROXANA KENNEDY, COUNTY              **PER CHAMBERS RULES, NO**
    OF SAN DIEGO, BOARD OF              **ORAL ARGUMENT UNLESS**
17  TRUSTEES OF UNIVERSITY OF           **SEPARATELY ORDERED BY THE**
    CALIFORNIA, SAN DIEGO, DOES         **COURT**
18  1 to 200,
                                        Date:        July 9, 2021
19               Defendants.            Courtroom:  15A
                                        Judge: Hon. Cathy Ann Bencivengo
20
                                        Complaint Filed: April 2, 2021
21                                      Trial Date: None set

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

                              1

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................... 11

AUTHORITY ................................................................ 11

FACTS ......................................................................... 12

ARGUMENT ................................................................. 13

    A.    Plaintiffs Lack Standing To Bring Any Claim On Watts' Behalf .............................................................. 13

    B.    This Court Should Dismiss Plaintiffs' First And Second Claims For Relief Under 42 U.S.C. Section 1983 Against Chief Kennedy ............................................. 14

        1.    The Fourth Amendment Exclusively Governs Plaintiffs' Claims ................................................ 14

        2.    Failure To Allege Personal Involvement By Chief Kennedy ........................................................ 15

    C.    This Court Should Dismiss Plaintiffs' Third Claim For Relief Under 42 U.S.C. Section 1983 Against Chief Kennedy ....................................................... 16

        1.    Odin Watts' Claim Is Insufficiently Plead ............ 17

        2.    Qualified Immunity From Diana Watts' Claim......... 18

            a.    Absence Of A Constitutional Violation ........ 18

            b.    Absence Of A Clearly Established Fourteenth Amendment Right Of Spouses To Familial Relations ......................................................... 25

    D.    This Court Should Dismiss Plaintiffs' Fourth And Fifth Claims For Relief Against The City Under Title II of the ADA and Section 504 Of The Rehabilitation Act .......... 27

        1.    Uncertain................................................................ 28

        2.    Injunctive Relief Unavailable ............................... 28

        3.    Insufficient Allegations Of Intentional Discrimination.......28

    E.    This Court Should Dismiss Plaintiffs' Sixth Claim For Wrongful Death Against Chief Kennedy And The City .............. 29

        1.    Unruh Civil Rights Act........................................... 29

        2.    Ralph Act ............................................................... 32

3.   Bane Act ........................................................... 32

4.   Disabled Persons Act.......................................... 33

F.   This Court Should Dismiss Plaintiffs' Eighth Claim For Relief Against The City And Chief Kennedy for Battery ............ 33

G.   This Court Should Dismiss Plaintiffs' Ninth Claim For Relief Against The City And Chief Kennedy for Negligence ....... 34

H.   This Court Should Dismiss Plaintiffs' Claim For Punitive Damages Against Chief Kennedy ................................................. 34

CONCLUSION ................................................................................. 35

1

TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3

**Cases**

4

*A.B. v. Cty. of San Diego*
2020 U.S. Dist. LEXIS 182507 (S.D. Cal. Oct. 1, 2020) ..........................26

5

*Adkins v. Limtiaco*
6      537 F.App'x 721 (9th Cir. 2013) .................................................................16

7

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ...............................................................11, 12, 15, 16

8

*Bach v. Idaho State Bd. of Med.*
9      2012 U.S. Dist. LEXIS 7043 (D. Idaho Jan. 20, 2012).............................26

10

*Bates v. United Parcel Serv., Inc.*
511 F.3d 974 (9th Cir. 2007).......................................................................11

11

*Bell Atl. Corp. v. Twombly*
12     550 U.S. 544 (2007) ..............................................................................12, 28

13

*Bell v. City of Milwaukee*
746 F.2d 1205 (7th Cir.1984)......................................................................20

14

*Boeken v. Phillip Morris USA, Inc.*
15     48 Cal.4th 788 (2010)..................................................................................34

16

*Brennon B. v. Superior Court*
57 Cal.App.5th 367 (2020).........................................................................30

17

*Bryan Cty. v. Brown*
18     520 U.S. 397 (1997) ...................................................................................17

19

*Burnett v. San Francisco Police Dep't*
36 Cal.App.4th 1177 (1995)........................................................................30

20

*Byrd v. Guess*
21     137 F.3d 1126 (9th Cir. 1998)..............................................................22, 24

22

*Camreta v. Greene*
563 U.S. 692 (2011) ....................................................................................26

23

*Carroll v. San Diego Cty.*
24     2020 U.S. Dist. LEXIS 133616 (S.D. Cal. July 28, 2020)...................15, 16

25

*Carter v. City of Los Angeles*
224 Cal.App.4th 808 (2014)........................................................................30

26

*City of Canton v. Harris*
27     489 U.S. 378 (1989) ....................................................................................16

28

*///*

4

*Coe v. City of San Diego*
  2017 U.S. Dist. LEXIS 49769 (S.D. Cal. Mar. 31, 2017).........................16

*Collin v. City of Harker Heights*
  503 U.S. 115 (1992) .................................................................................22

*Conservation Force v. Salazar*
  646 F.3d 1240 (9th Cir. 2011).................................................................11

*Cosby v. City of Oakland*
  1997 U.S. Dist. LEXIS 24925 (N.D. Cal. Oct. 28, 1997)...................23, 25

*Curran v. Mount Diablo Council of the Boy Scouts*
  17 Cal.4th 670 (1998)...............................................................................30

*Davila v. County of San Joaquin*
  2008 U.S. Dist. LEXIS 83785 (E.D. Cal. Aug. 20, 2008) .................23, 25

*Dean v. Sacramento County*
  2014 U.S. Dist. LEXIS 124361 (E.D. Cal. Sept. 4, 2014).............23, 24, 25

*District of Columbia v. Wesby,*
  138 S.Ct. 577 (2018) ................................................................................18

*Engebretson v. Mahoney*
  2010 U.S. Dist. LEXIS 36176 (D. Mont. Mar. 3, 2010)...........................21

*Estate of Brown v. Lambert*
  478 F.Supp.3d 1006 (S.D. Cal. 2020)...........................................22, 23, 24

*Estate of Leng v. City of Issaquah*
  2020 U.S. Dist. LEXIS 237720 (W.D. Wash. Dec. 17, 2020)..................27

*Estate of Lopez ex rel. Lopez v. Torres*
  105 F.Supp.3d 1148 (S.D. Cal. 2015) .......................................................23

*Estate of Lopez v. Torres*
  2015 U.S. Dist. LEXIS 143298 (S.D. Cal. Oct. 21, 2015) .......................15

*Estate of Wilson v. Cty. of San Diego*
  2020 U.S. Dist. LEXIS 121662 (S.D. Cal. July 10, 2020.) ......................34

*Felarca v. Birgeneau*
  891 F.3d 809 (9th Cir. 2018)..............................................................15, 16

*Ferguson v. City of Phoenix*
  157 F.3d 668 (9th Cir. 1998)..............................................................27, 28

*Graham v. Connor*
  490 U.S. 386 (1989) .................................................................................15

*Gregory v. Cty. of L.A.*
  2014 Cal. App. Unpub. LEXIS 8358 (Nov. 21, 2014) .............................31

///

5

*Gresham v. Dell*
   630 F.Supp. 1135 (N.D. Ga. 1986) ............................................................21

*Guillory v. Orange Cty.*
   731 F.2d 1379 (9th Cir. 1984)....................................................................16

*Hamby v. Hammond*
   821 F.3d 1085 (9th Cir. 2016)....................................................................26

*Harbury v. Deutch*
   233 F.3d 596 (D.C. Cir. 2000) ......................................................21, 22, 26

*Harrison v. City of Rancho Mirage*
   243 Cal.App.4th 162 (2015)........................................................................30

*J.K.G. v. County of San Diego*
   2011 U.S. Dist. LEXIS 126907 (S.D. Cal. Nov. 2, 2011) .........................34

*Keates v. Koile*
   883 F.3d 1228 (9th Cir. 2018)....................................................................15

*Kerry v. Din*
   135 S.Ct. 2128 (2015) ................................................................................22

*Khrapunov v. Prosyankin*
   931 F.3d 922 (9th Cir. 2019)......................................................................24

*Kohn v. State Bar of Cal.*
   497 F. Supp. 3d 526 (N.D. Cal. Oct. 27, 2020) ........................................31

*L.V.B. v. City of Chino*
   2010 U.S. Dist. LEXIS 161316 (C.D. Cal. Feb. 18, 2010)..................23, 24

*L.W. v. Grubbs*
   92 F.3d 894 (9th Cir. 1996)........................................................................18

*Lee v. City of Los Angeles*
   250 F.3d 668 (9th Cir. 2001).....................................................17, 20, 22, 25

*Legal Servs. Corp. v. Velazquez*
   531 U.S. 533 (2001) ...................................................................................24

*Lemire v. Cal. Dep't of Corr. & Rehab.*
   726 F.3d 1062 (9th Cir.2013).....................................................................23

*Luis v. Cty. of San Diego*
   2018 U.S. Dist. LEXIS 69041 (S.D. Cal. Apr. 24, 2018)..............13, 17, 18

*McCarty v. State of California Dep't of Transp.*
   164 Cal.App.4th 955 (2008)........................................................................34

*Merritt v. County of Los Angeles*
   875 F.2d 765 (9th Cir. 1989)......................................................................16

///

6

*Meyers v. Cty. of Los Angeles*
    2011 U.S. Dist. LEXIS 152959 (C.D. Cal. Dec. 19, 2011) ........................28

*Monell v. Department of Social Services of the City of New York*
    436 U.S. 658 (1978) ...............................................................................16

*Montoya v. City of San Diego*
    434 F.Supp.3d 830 (S.D. Cal. 2020) ......................................................33

*Moore v. Regents of the Univ. of Cal.*
    2016 U.S. Dist. LEXIS 167737 (N.D. Cal. Dec. 5, 2016.) ......................29

*Mora v. City of Chula Vista*
    2021 U.S. Dist. LEXIS 57948 (S.D. Cal. Mar. 25, 2021)........................33

*Morales v. City of Delano*
    852 F.Supp.2d 1253 (E.D. Cal. 2012)............................................23, 24, 25

*Moralez v. City of Fresno*
    2006 U.S. Dist. LEXIS 108171 (E.D. Cal. May 13, 2006).................23, 24

*Moreland v. Las Vegas Metro. Police Dep't.*
    159 F.3d 365 (9th Cir. 1998).....................................................................13

*Niehus v. Liberio*
    973 F.2d 526 (7th Cir.1992)................................................................21, 26

*Orff v. City of Imperial*
    2017 U.S. Dist. LEXIS 90104 (S.D. Cal. June 12, 2017)........................32

*Pahle v. Colebrookdale Township*
    227 F.Supp.2d 361 (E.D. Pa. 2002) .........................................................21

*Patel v. Kent Sch. Dist.*
    648 F.3d 965 (9th Cir. 2011).....................................................................18

*Piper v. Cabillo*
    670 F. App'x 507 (9th Cir. 2016) .............................................................20

*Porter v. Osborn*
    546 F.3d 1131 (9th Cir. 2008)...................................................................17

*Provencio v. Vazquez*
    2007 U.S. Dist. LEXIS 40380 (E.D. Cal. June 4, 2007)..........................25

*Provencio v. Vazquez*
    258 F.R.D. 626 (E.D. Cal. 2009)..............................................................25

*Qualified Patients Assn. v. City of Anaheim*
    187 Cal.App.4th 734 (2010)......................................................................30

*Reason v. City of Richmond*
    2021 U.S. Dist. LEXIS 6015 (E.D. Cal. Jan. 12, 2021)...........................16

///

7

*Reyes v. County of San Joaquin*
    2005 U.S. Dist. LEXIS 37353 (E.D. Cal. Aug. 31, 2005) ..................23, 24

*Rodriguez v. Cty. of Los Angeles*
    891 F.3d 776 (9th Cir. 2018).......................................................................16

*Rohr v. Crime Victims Comp. Comm'n*
    2017 U.S. Dist. LEXIS 226189 (D. Haw. Sep. 29, 2017) .........................28

*Rosales v. County of San Diego*
    2021 U.S. Dist. LEXIS 1306 (S.D. Cal. Jan. 5, 2021)..............................17

*Rubin v. City of Inglewood*
    2020 U.S.Dist.LEXIS 168059 (C.D.Cal. July 17, 2020) ..........................30

*Sakamoto v. Duty Free Shoppers, Ltd.*
    764 F.2d 1285 (9th Cir. 1985).....................................................................24

*Serrano v. Francis*
    345 F.3d 1071 (9th Cir. 2003).....................................................................29

*Sharp v. Cty. Of Orange*
    871 F.3d 901 (9th Cir. 2017).......................................................................26

*Shatford v. L.A. Cnty*
    2016 U.S. Dist. LEXIS 52473 (C.D. Cal. Mar. 29, 2016) ........................31

*Sheehan v. City & Cty. of San Francisco*
    743 F.3d 1211 (9th Cir. 2014).....................................................................28

*Smith v. City of Fontana*
    818 F.2d 1411 (9th Cir. 1987).....................................................................25

*Smith v. City of Hemet*
    394 F.3d 689 (9th Cir. 2005).......................................................................15

*Smith v. Wade*
    461 U.S. 30 (1983) .......................................................................................35

*Smoot v. City of Placentia*
    950 F.Supp. 282 (C.D. Cal.1997)................................................................25

*Tatum v. City & Cty. of San Francisco*
    441 F.3d 1090 (9th Cir. 2006).....................................................................13

*Taylor v. County of Los Angeles*
    2020 U.S. Dist. LEXIS 166332 (C.D. Cal. Aug. 13, 2020).......................23

*Tekle v. United States*
    511 F.3d 839 (9th Cir. 2006).......................................................................34

*Updike v. Multnomah Cty.*
    870 F.3d 939 (9th Cir. 2017).......................................................................29

///

8

*Vasilenko v. Grace Family Church*
    3 Cal.5th 1077 (2017)..................................................................................34

*Vos v. City of Newport Beach*
    892 F.3d 1024 (9th Cir. 2018)....................................................................27

*Ward v. City of San Jose*
    967 F.2d 280 (9th Cir. 1991)......................................................18, 19, 20

*Warfield v. Peninsula Golf & Country Club*
    10 Cal.4th 594 (1995).................................................................................30

*Washington v. Glucksberg*
    521 U.S. 702 (1997) ...................................................................................19

*West v. City of Caldwell*
    931 F.3d 978 (9th Cir. 2019) .....................................................................18

*Wheeler v. City of Santa Clara*
    894 F.3d 1046 (9th Cir. 2018)....................................................18, 19, 20

*White v. Pauly*
    137 S.Ct. 548 (2017) ..................................................................................26

*Wilkins-Jones v. Cnty. of Alameda*
    859 F.Supp.2d, 1039 (N.D. Cal. 2012) ....................................................33

*Wilkinson v. Torres*
    610 F.3d 546 (9th Cir. 2010)......................................................................23

*Williams v. Cty. of Alameda*
    2018 U.S. Dist. LEXIS 185930 (N.D. Cal. Oct. 30, 2018).......................31

*Young v. Cty. of San Diego*
    2021 U.S. Dist. LEXIS 53564 (S.D. Cal. Mar. 22, 2021)...................32, 33

*Zundel v. Mukasey*
    2009 U.S. Dist. LEXIS 105011 (E.D. Tenn. Nov. 10, 2009) ...................21

**Statutes**

42 U.S.C. § 1983................................................................14, 15, 16, 20

Cal. Civ. Code, § 51..........................................................29, 30, 31

Cal. Civ. Code, § 51.7.............................................................29, 32

Cal. Civ. Code, § 52......................................................................29

Cal. Civ. Code, § 52.1...................................................................32

Cal. Civ. Code, § 54......................................................................33

Cal. Civ. Code, § 54.1.............................................................29, 33

9

Cal. Civ. Code, § 3294 ........................................................................................ 34

Cal. Civ. Code, § 377.30 ..................................................................................... 13

Gov. Code, § 815 ................................................................................................. 33

**Rules**

Fed. Rule Civ. P., § 8(a)(2) ................................................................................. 11

Fed. Rule Civ. P., § 12(b)(1) .............................................................................. 11

Fed. Rule Civ. P., § 12(b)(6) .............................................................................. 11

**INTRODUCTION**

Plaintiffs are Diana and Odin Watts, the wife and son of decedent Jason Watts ("Watts). Doc. No. 10 ¶¶ 1, 4. Plaintiffs assert claims under 42 U.S.C. section 1983 (section 1983) and California law arising out of Watts' death at a hospital after an encounter with City of Chula Vista law enforcement officers (sued as Does 1-10). Plaintiffs maintain claims against the City, as well as Chief of Police Roxanna Kennedy in her "personal and individual capacity as a supervisory official." *Id.* at ¶10. Plaintiffs bring claims in their individual capacities seeking their own damages caused by Watts' death (i.e., wrongful death damages) and as Watts' successors in interest seeking damages recoverable by Watts had he survived (i.e., survivor damages). *Id.* at ¶10. The City and Chief Kennedy move to dismiss various claims asserted by plaintiffs as they lack standing to maintain Watts' claims and the claims are not cognizable theories of liability or insufficiently plead. Chief Kennedy also attacks one claim under the doctrine of qualified immunity.

**AUTHORITY**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Lack of standing equals a lack of jurisdiction. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

A district court properly dismisses a claim under Federal Rule of Civil Procedure 12(b)(6) if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).

"Under Federal Rule of Civil Procedure 8(a)(2) a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Facts "'merely consistent with' a defendant's liability" are insufficient. *Id.*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555 (citations omitted).

## FACTS

On October 12, 2018, around 11:30 p.m., unknown City police officers encountered Watts at a 7-11 store. Doc. No. 10, ¶ 17. The officers responded to a request for assistance by Watts and 7-11 personnel. *Id.* Watts, in mental distress, had run behind the counter of a 7-11 store to protect himself from people outside he thought were waiting to kill him. *Id.* Officers used various less lethal techniques and methodologies to get Watts into custody. *Id.* Plaintiffs allege the officers should have used less intrusive means to gain control of Watts; specifically, the officers should have called professionals trained in de-escalating situations involving persons suffering from mental distress. *Id.* at ¶17.

After Watts was in custody, paramedics were called to the scene and transported Watts to Paradise Valley Hospital for evaluation. *Id.* at ¶18. Watts was found suitable for incarceration. *Id.* Watts was then transported to the County of San Diego jail. *Id.* While being booked, it was determined Watts needed further medical treatment, and he was subsequently transported by ambulance to University of California of San Diego Medical Center. *Id.* Once there, Watts suffered complications and was pronounced dead around 12:21 p.m. on October 13, 2018. *Id.*

///

1  **ARGUMENT**

2  **A.    Plaintiffs Lack Standing To Bring Any Claim On Watts' Behalf**

3     Plaintiffs' first, second, fourth, fifth, seventh, eighth and ninth claims for

4  relief are brought on Watts' behalf as successors in interest.

5     "The party seeking to bring a survival action bears the burden of

6  demonstrating that a particular state's law authorizes a survival action and that

7  the plaintiff meets that state's requirements for bringing a survival action."

8  *Moreland v. Las Vegas Metro. Police Dep't.*, 159 F.3d 365, 369 (9th Cir. 1998).

9  Under California law, a survival action "may be commenced by the decedent's

10  personal representative or, if none, by the decedent's successor in interest." Cal.

11  Civ. Code, § 377.30; *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090,

12  1093 n.2 (9th Cir. 2006). "In California any person seeking to commence an

13  action pursuant to section 377.30 must execute and file an affidavit setting forth

14  that person's qualifications as a successor. Cal. Civ. Proc. Code, § 377.32." *Luis*

15  *v. Cty. of San Diego*, 2018 U.S. Dist. LEXIS 69041, at *22 (S.D. Cal. Apr. 24,

16  2018).

17     California law requires a person seeking to bring an action as the

18  decedent's successor in interest to "execute and file an affidavit or declaration"

19  under penalty of perjury, stating (1) the decedent's name; (2) the date and place

20  of decedent's death; (3) that no proceedings are pending in California for the

21  administration of the decedent's estate; (4) either that the declarant is the

22  decedent's successor in interest or is authorized to act on behalf of the decedent's

23  successor in interest; and (5) that no other person has a superior right to

24  commence the action or proceeding for the decedent." Cal. Civ. Code, §

25  377.32(a).  If the decedent's estate was administered, the declarant must further

26  produce a copy of the final order showing distribution of the decedent's cause of

27  action to the successor in interest. *Id.* at § 377.32(a)(4).

28  ///

13

Because plaintiffs have not filed the required declarations, and there are no allegations in the complaint establishing the statutory requirements for bringing a survival action on Watts' behalf, this Court should dismiss g plaintiffs' claims brought on Watts' behalf for lack of standing. *See Ayala v. Cty. of Imperial*, 2017 U.S. Dist. LEXIS 16508, at *10-11 (S.D. Cal. Feb. 3, 2017).

**B.    This Court Should Dismiss Plaintiffs' First And Second Claims For Relief Under 42 U.S.C. Section 1983 Against Chief Kennedy**

Plaintiffs' first and second claims for relief under section 1983 against Chief Kennedy are brought on Watts' behalf seeking damages for violations of Watts' Fourth and Fourteenth Amendment rights to be free from excessive force. Doc. No. 10, pp. 10-13.  Plaintiffs second claim for relief under section 1983 likewise seeks damages for violations of Watts' Fourteenth Amendment substantive due process rights resulting from the use of excessive force. *Id.*  This Court should dismiss the Fourteenth Amendment based claims because: (1) all excessive force claims are exclusively governed by the Fourth Amendment; and (2) the absence of factual allegations establishing Chief Kennedy's personal involvement in any violation of Watts' Fourth or Fourteenth Amendment rights.

**1.    The Fourth Amendment Exclusively Governs Plaintiffs' Claims**

Again, plaintiff's first claim for relief is an "excessive force" claim under section 1983 alleging violations of Watts' Fourth and Fourteenth Amendment rights.  Doc. No. 10, ¶26.  Plaintiffs second claim for relief under section 1983 asserts a denial of due process under the Fourteenth Amendment. *Id.* at ¶35. Both are based on the interaction between Watts and City police officers on October 12, 2018.  *Id.* at ¶¶17-40.

The Fourth Amendment exclusively governs all excessive force claims: "*[A]ll* claims that law enforcement officers have used excessive force -- deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness'

1    standard, rather than under a 'substantive due process' approach" under the

2    Fourteenth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see*

3    *Smith v. City of Hemet*, 394 F.3d 689, 700-01 (9th Cir. 2005); *Estate of Lopez v.*

4    *Torres*, 2015 U.S. Dist. LEXIS 143298, at *36 (S.D. Cal. Oct. 21, 2015).

5         Accordingly, plaintiffs cannot maintain any Fourteenth Amendment

6    claims on Watts' behalf arising from his interactions with City police officers.

7    **2.    Failure To Allege Personal Involvement By Chief Kennedy**

8         Because there is no vicarious liability under section 1983, supervisors are

9    not liable for their subordinates' misdeeds.  *Iqbal*, 556 U.S. at 676; *Felarca v.*

10   *Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018).  Thus, a supervisor liability claim

11   requires allegations establishing Chief Kennedy's "own individual actions,

12   ha[ve] violated the Constitution."  *Iqbal,* 556 U.S. at 676.   "A supervisory

13   official may be held liable under § 1983 only if there exists either (1) his or her

14   personal involvement in the constitutional deprivation, or (2) a sufficient causal

15   connection between the supervisor's wrongful conduct and the constitutional

16   violation." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (quotation

17   marks and citations omitted).

18        Plaintiffs must allege facts establishing Chief Kennedy "set[ ] in motion a

19   series of acts by others" or Chief Kennedy "knowingly refus[ed] to terminate a

20   series of acts by others, which the supervisor knew or reasonably should have

21   known would cause others to inflict a constitutional injury." *Felarca,* 891 F.3d at

22   820 (internal quotation marks and citations omitted).   They do not.

23        Plaintiffs' complaint "is devoid of factual allegations sufficient to show

24   that [Chief Kennedy] 'participated in or directed [the officer's] violations, or

25   knew of the violations and failed to act to prevent them." *Carroll v. San Diego*

26   *Cty.*, 2020 U.S. Dist. LEXIS 133616, at *9 (S.D. Cal. July 28, 2020) (citations

27   omitted.)  Without allegations of specific facts establishing a causal connection

28   between Chief Kennedy's conduct and the violations of Watts' constitutional

rights by the officers, plaintiffs' supervisory liability claim is insufficiently plead as it is based solely on her position as Chief. *Iqbal*, 556 U.S. at 676; *see Felarca*, 891 F.3d at 820 ("Without [alleging facts establishing] that crucial causal connection, plaintiffs' argument is nothing more than an attempt to hold the UC administrators liable solely by virtue of their office. That argument fails..."). Put simply, plaintiffs' general and non-specific allegations reciting the elements of a supervisor liability claim are insufficient. *Iqbal*, 556 U.S. at 680-81; *Adkins v. Limtiaco,* 537 F.App'x 721, 723 (9th Cir. 2013); *Carroll,* 2020 U.S. Dist. LEXIS 133616, at *8-9; *Coe v. City of San Diego*, 2017 U.S. Dist. LEXIS 49769, at *18-19 (S.D. Cal. Mar. 31, 2017).

Moreover, claims under section 1983 for inadequate policies and procedures are municipal liability claims against an entity under *Monell*, as are claims based on failure to train, supervise and discipline (i.e., ratification). *Monell v. Dept. of Soc. Serv. of the City of New York*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989); *see Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802-03 (9th Cir. 2018) (discussing liability theories under *Monell*). But "*Monell* does not concern liability of individuals acting under color of state law." *Guillory v. Orange Cty.*, 731 F.2d 1379, 1382 (9th Cir. 1984). Thus, "a *Monell* claim may be brought only against a municipality, not an individual" like Chief Kennedy. *Reason v. City of Richmond*, 2021 U.S. Dist. LEXIS 6015, at *13 (E.D. Cal. Jan. 12, 2021).

**C.   This Court Should Dismiss Plaintiffs' Third Claim For Relief Under 42 U.S.C. Section 1983 Against Chief Kennedy**

Plaintiffs' third claim for relief is brought on their own behalf and seeks damages under the Fourteenth Amendment for the interference with their familial relationship with Watts. Doc. No. 10, ¶¶ 42-43.

///

16

1  **1.    Odin Watts' Claim Is Insufficiently Plead**

2        The relationship between a parent and child is protected from government

3  interference through the Fourteenth Amendment's substantive due process

4  clause.  *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001).  As this

5  Court has explained:

6        To prevail on such a substantive due process claim requires a parent
       demonstrate the liberty deprivation was caused by the government
7        in such a way that shocks the conscience or interferes with rights
       implicit in the concept of ordered liberty. This means the conduct
8        must more than offend some fastidious squeamishness or private
       sentimentalism, but offend even hardened sensibilities.  As the
9        Ninth Circuit has explained, conduct that 'shocks that conscience' is
       that which 'either consciously or through complete indifference
10       disregards the risk of an unjustified deprivation of liberty.

11  *Luis*, 2018 U.S. Dist. LEXIS 69041, at *19-20 (quotation marks and citations

12  omitted).

13       "To determine whether the alleged actions shock the conscience, a court

14  must first ask 'whether the circumstances are such that actual deliberation is

15  practical.'" *Rosales v. Cty. of San Diego,* 2021 U.S. Dist. LEXIS 1306, at *20

16  (S.D. Cal. Jan. 5, 2021) (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir.

17  2008)).  Where decisions are made with time to deliberate, conduct amounting to

18  "deliberate indifference" shocks the conscience.  *Porter*, 546 F.3d at 1137.

19  Where decisions are made under rapidly evolving circumstances, a defendant

20  engages in conscience shocking conduct only when acting with a purpose to

21  harm unrelated to a legitimate law enforcement objective.  *Id.* at 1140.

22       Because Chief Kennedy was not at the scene, and plaintiffs' allegations do

23  not invoke decisions she made under rapidly evolving circumstances, Doc. No.

24  10, ¶45, the deliberate indifference standard is appropriate.

25       Deliberate indifference is a "stringent standard of fault, requiring that a

26  municipal actor disregarded a known or obvious consequence of his action."

27  *Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997).  "The Ninth Circuit has made

28  clear that negligence, or even gross negligence, is not enough for deliberate

17

1    indifference, deliberate indifference requires a culpable mental state." *Luis*, 2018

2    U.S. Dist. LEXIS 69041, at *16 (citing *L.W. v. Grubbs*, 92 F.3d 894, 898-900

3    (9th Cir. 1996)); *see Patel v. Kent Sch. Dist.,* 648 F.3d 965, 974 (9th Cir. 2011)

4    ("Under *Grubbs*, the standard we apply is even higher than gross negligence—

5    deliberate indifference requires a culpable mental state.").

6         Thus, plaintiffs must allege facts establishing Chief Kennedy

7    "recognize[d] [an] unreasonable risk and actually intend[ed] ... to expose [Watts]

8    to such risks without regard to the consequences to [Watts]." *Grubbs,* 92 F.3d at

9    899 (quotation marks omitted).  "In other words, [Chief Kennedy] 'knows that

10   something is going to happen but ignores the risk and exposes [Watts] to it.'"

11   *Patel*, 648 F.3d at 974.  Plaintiffs allege no such facts.  Plaintiffs conclusory and

12   general allegations about insufficiencies or lapses in policies, training or

13   supervision are insufficient to establish Chief Kennedy acted with deliberate

14   indifference.  Doc. No. 10, ¶¶ 45, 47.

15   **2.     Qualified Immunity From Diana Watts' Claim**

16        "Police officers have qualified immunity for their official conduct unless

17   (1) they violate a federal statutory or constitutional right and (2) that right was

18   clearly established at the time of the challenged conduct." *West v. City of*

19   *Caldwell*, 931 F.3d 978, 982-983 (9th Cir. 2019) (citing *District of Columbia v.*

20   *Wesby*, 138 S. Ct. 577, 589 (2018)). Diana Watts' loss of familial association

21   claim fails because she has no Fourteenth Amendment right to continued

22   association with Watts and, even if she did, no "clearly established" right.

23   **a.     Absence Of A Constitutional Violation**

24        "Few close relationships-even between blood relatives-can serve as a basis

25   for asserting Fourteenth Amendment loss of [familial association] claims."

26   *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018) (citing

27   *Ward v. City of San Jose*, 967 F.2d 280 (9th Cir. 1991).  However, in the Ninth

28   Circuit, "[a] decedent's parents and children generally have the right to assert

substantive due process claims [for loss of familial association] under the Fourteenth Amendment." *Wheeler*, 894 F.3d at 1057.  But the Ninth Circuit has never held a Fourteenth Amendment right to familial association extends to any relationships other than parent-child. And for good reason.  The Supreme Court has not recognized such a right, and its precedent counsels against extending such a right to spouses.

"[The Supreme Court's] established method of substantive-due-process analysis has two primary features: First, [it has] regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed.  Second, [it has] required in substantive-due-process cases a careful description of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quotation marks and citations omitted). The Supreme Court has warned against expanding the class of plaintiffs who may bring substantive due process claims.  The Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended" and cautioned that courts must "exercise the utmost care" in extending constitutional protection to an asserted right or liberty interest because, in doing so, a court "place[s] the matter outside the arena of public debate and legislative action." *Id*. at 720 (citations omitted).

*Ward* is a good example of the cautious approach the Ninth Circuit has taken in declining to expand Fourteenth Amendment substantive due process rights in association or companionship beyond parents and children.  In *Ward*, the court held siblings have no Fourteenth Amendment substantive due process right in the companionship with other siblings and, thus, siblings cannot maintain Fourteenth Amendment loss of familial association claims.  *Id*. at 283-84; *id*. at

19

1   284 ("Neither the legislative history nor Supreme Court precedent supports an

2   interest for siblings consonant with that recognized for parents and children.");

3   *see also Wheeler*, 894 F.3d at 1058-59 (biological parent of adopted child had no

4   Fourteenth Amendment familial association rights).

5        In reaching its conclusion, *Ward* adopted the rule from *Bell v. City of*

6   *Milwaukee*, 746 F.2d 1205 (7th Cir.1984), a case finding siblings lack a

7   Fourteenth Amendment right in companionship with each other.  *Ward*, 967 F.2d

8   at 284 ("We adopt the earlier and better rule of *Bell*.").  Explaining the reason for

9   denying siblings Fourteenth Amendment familial association rights, *Bell*

10  observed:

> [I]f we were to hold that the federal Constitution entitles the siblings
> to recover for loss of society and companionship, there could be no
> principled way of limiting such a holding to the immediate family or
> perhaps even to blood relationships. Obviously many human
> relationships stem from the 'emotional attachments that derive from
> the intimacy of daily association,' but we are unwilling to attach
> constitutional significance to such attachments outside the closely
> guarded parent-child relationship.

16  746 F.2d at 1247.

17       Relying on *Ward*, the Ninth Circuit more recently found that "[a]lthough

18  § 1983 allows a parent to recover damages for the state's interference with the

19  constitutionally protected liberty interest in the companionship and society of his

20  or her child, this right does not extend to other family members, such as great

21  aunts, or creature[s] of state law, such as legal guardians."  *Piper v. Cabillo*, 670

22  F. App'x 507 (9th Cir. 2016).

23       The "[Ninth] Circuit has not directly addressed whether there is a

24  substantive due process right to the familial association with one's spouse." *Lee*

25  *v. Cty. of Los Angeles,* 2018 U.S. Dist. LEXIS 228597, at *7 (C.D. Cal. Mar. 6,

26  2018).  And "[c]ourts considering the issue have disagreed over whether such a

27  right exists."  *Id.* (citations omitted).  But most have found the absence of such a

28  right.  As one district court explained:

In reviewing the decisions of the courts that have addressed this issue, a majority of the cases reviewed indicate that most courts have found that the Constitution does not include a right to spousal consortium. *See Niehus v. Liberio*, 973 F.2d 526, 534 (7th Cir.1992) (concluding that '[d]eprivations of the lesser services comprehended in the portmanteau term "consortium" are not deprivations of liberty within the restricted meaning that the term bears in the Constitution.'); *Gresham v. Dell*, 630 F.Supp. 1135, 1138 (N.D. Ga. 1986); *Harbury v. Deutch*, 233 F.3d 596, 606 (D.C. Cir. 2002), *rev'd in part on other grounds*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (refusing to hold that the plaintiff had alleged a constitutional violation based on interference with familial association because she had alleged a claim that involved neither 'a parent-child relationship nor purposeful[ ] interference with a familial relationship'); *Norcross v. Town of Hammonton*, No. 04-2536, 2006 WL 1995021, at *3 (D.N.J. July 13, 2006). *But see Pahle v. Colebrookdale Township*, 227 F.Supp.2d 361, 383 (E.D. Pa. 2002). [fn]. Accordingly, this Court finds that the loss of spousal consortium is not a constitutional right that may be asserted by a spouse ….

*Zundel v. Mukasey*, 2009 U.S. Dist. LEXIS 105011, at *9 (E.D. Tenn. Nov. 10, 2009). As similarly explained by a district court within the Ninth Circuit:

Despite the Supreme Court's long history of recognizing aspects of the marital relationship as fundamental liberty interests, 'the Court has never sanctioned constitutional protection of consortium ' in the marital relationship. *Pagan v. Township of Raritan*, 2006 WL 2466862, *10 (D. N.J. 2006). Instead, 'federal courts have generally held that plaintiffs alleging federal civil rights violations may not sue for the loss of companionship of a family member,' because the claim is not legally cognizable under federal law and § 1983. *Rzayeva v. United States*, 492 F.Supp.2d 60, 83 (D. Conn. 2007) (citing cases). Generally, a plaintiff's claim seeking compensation for the loss of support, consortium, or companionship with his or her spouse does not rise to the level of 'a constitutionally protected substantive liberty interest, the deprivation of which may be redressed under § 1983.' *Tate v. Waller*, 2007 WL 2688532, *6 (S.D. Miss. 2007) (citing cases). *But see Pahle v. Colebrookdale Township*, 227 F. Supp. 2d 361, 380-81 (E.D. Pa. 2002) (permitting consortium claim under § 1983), and *Brodlic v. City of Lebanon*, 2005 U.S. Dist. LEXIS 43144, 2005 WL 2250840, *8 (M.D. Pa. 2005) (same).

*Engebretson v. Mahoney*, 2010 U.S. Dist. LEXIS 36176, *14-15 (D. Mont. Mar. 3, 2010) (dismissing a wife's section 1983 claim against state actors for imposing unlawful probation terms on her husband because the court does not recognize consortium or companionship as a constitutionally protected liberty interest).

1   Following the majority of other courts, the district court in *Lee* "decline[d]
2  to create … a [Fourteenth Amendment] right" to familial association between
3  spouses.  *Lee,* 2018 U.S. Dist. LEXIS 228597, at *7.  The district court's
4  reasoning was two-fold and entirely faithful to Supreme Court precedents.  First,
5  the district court recognized "[t]he Supreme Court itself 'has always been
6  reluctant to expand the concept of substantive due process' and has made clear
7  that the 'doctrine of self-restraint requires [that Court] to exercise the utmost care
8  whenever [it is] asked to break new ground in this field.'"  *Id.* (quoting *Collin v.*
9  *City of Harker Heights*, 503 U.S. 115, 125 (1992).  Second, the district court
10  relied on decisions from the D.C. Circuit and the Supreme Court: *Harbury v.*
11  *Deutch*, 233 F.3d 596 (D.C. Cir. 2000); and *Kerry v. Din*, 135 S.Ct. 2128 (2015)
12  (Scalia, J., judgment of the Court).  *Id.* at *8.  The district court observed
13  *Harbury* declined to find a Fourteenth Amendment right to continued association
14  with a spouse because the Supreme Court had not expanded familial association
15  rights to spouses.  *Lee*, 2018 LEXIS 228597, at 8-9 (citing *Harbury*, 233 F.3d at
16  604-07).  The district court further observed the Supreme Court in *Din* declined
17  to find a Fourteenth Amendment right to continued association with a spouse
18  because as "Justice Scalia explained[,] [ ] none of the Court's cases - including
19  those that recognized the right to marriage - created a liberty interest to be with
20  one's spouse."  *Id.* at *9-10 (citing *Din*, 135 S. Ct. at 2134-35).
21   A recent decision from a judge in this district disagreed with *Lee*,
22  concluding spouses have Fourteenth Amendment familial association rights.
23  *Estate of Brown v. Lambert,* 478 F.Supp.3d 1006, 1021-22 (S.D. Cal. 2020).
24  Respectfully, *Lee* is better reasoned and faithful to Supreme Court precedent.
25   While acknowledging the Ninth Circuit has not directly extended
26  Fourteenth Amendment loss of familial association rights to spouses, the district
27  court in *Estate of Brown* observed that "in *Byrd v. Guess*, 137 F.3d 1126 (9th Cir.
28  1998) …, the Ninth Circuit assumed without deciding that there is such a right."

478 F.Supp.3d at 1021.  The district court further noted "[n]umerous district courts have also concluded that there is a substantive due process right to familial association with one's spouse." *Id.* at 1022 (citing *Morales v. City of Delano*, 852 F.Supp.2d 1253, 1274 (E.D. Cal. 2012); *Dean v. Sacramento Cty.*, 2014 U.S. Dist. LEXIS 124361 (E.D. Cal. Sept. 4, 2014); *Davila v. Cty. of San Joaquin*, 2008 U.S. Dist. LEXIS 83785 (E.D. Cal. Aug. 20, 2008); *Moralez v. City of Fresno*,  2006 U.S. Dist. LEXIS 108171 (E.D. Cal. May 13, 2006); *Reyes v. Cty. of San Joaquin*, 2005 U.S. Dist. LEXIS 37353 (E.D. Cal. Aug. 31, 2005); *Cosby v. City of Oakland*, 1997 U.S. Dist. LEXIS 24925 (N.D. Cal. Oct. 28, 1997); *L.V.B. v. City of Chino*, 2010 U.S. Dist. LEXIS 161316 (C.D. Cal. Feb. 18, 2010)).

Without any separate analysis, the district court in *Estate of Brown* found spouses can maintain Fourteenth Amendment loss of familial association claims because "*Byrd* proceeds under the assumption that there is such a right, and the majority of district courts in the Ninth Circuit have followed suit."  478 F.Supp.3d at 1022.[1]

---

[1] Another court in this district stated, without any analysis, that "[s]pouses and children may assert Fourteenth Amendment substantive due process claims if official conduct deprives them of their liberty interest in the companionship and society of their spouse or parent.*"  Estate of Lopez ex rel. Lopez v. Torres*, 105 F.Supp.3d 1148, 1160 (S.D. Cal. 2015) (citing *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir.2013); *Morales*, 852 F.Supp.2d at, 1273-74).  Without analysis, a central district court said the same thing, citing to *Lemire* and *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  *Taylor v. Cty. of Los Angeles*, 2020 U.S. Dist. LEXIS 166332, at *31 (C.D. Cal. Aug. 13, 2020).  Reliance on *Lemire* and *Wilkinson* for the proposition that spouses have Fourteenth Amendment association rights is problematic because neither case involved a spouse; *Lemire* involved parents and children and *Wilkinson* involved a parent. *Lemire*, 726 F.3d at 1075 ("Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct."); *Wilkinson*, 610 F.3d at 554 ("This circuit has recognized that parents

Whatever assumption *Byrd* made cannot control the issue of whether spouses enjoy Fourteenth Amendment familial association rights because "[i]t is axiomatic that cases are not authority for issues not considered." *Khrapunov v. Prosyankin*, 931 F.3d 922, 933 (9th Cir. 2019).  Moreover "unstated assumptions on non-litigated issues are not precedential holdings binding future decisions." *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985). *Byrd* is accordingly of no precedential value on the issue because *Byrd* never actually considered or analyzed the issue.  Indeed, the issue *Byrd* addressed was whether different culpability standards existed for Fourth and Fourteenth Amendment claims.  137 F.3d at 1133-34.  Even if *Byrd* "assumed without deciding" that spouses have Fourteenth Amendment familial association rights, that assumption is not in any way controlling precedent.  *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed."); *Sakamoto*, 764 F.2d at 1288 ("We do not view these cases as controlling precedent ....  In those cases, this court simply assumed that the commerce clause applied, but the issue was never raised or discussed.").

Although district court opinions are not controlling, it is worth briefly looking at the cases cited in *Estate of Brown* to demonstrate their lack of persuasive value.  Ignoring whether the issue was even contested and the absence of analysis, each case relied on decisions that do not support the conclusion that spouses enjoy Fourteenth Amendment familial association rights.

*Byrd* was relied on in *Dean*, 2014 U.S. Dist. LEXIS 124361, at *4, *Reyes*, 2005 U.S. Dist. LEXIS 37353, *9, *Moralez*, 2006 U.S. Dist. LEXIS 108171, at *10, and *L.V.B.*, 2010 U.S. Dist. LEXIS 161316, at *14.  As just explained, *Byrd*

_____

have a Fourteenth Amendment liberty interest in the companionship and society of their children.").  And as discussed *post*, reliance on *Morales* is likewise problematic because *Morales* relied on unsupportive decisions.

24

1    is not controlling or even persuasive authority for the proposition that spouses

2    enjoy Fourteenth Amendment familial association rights with each other.  The

3    district court in *Dean*, 2014 U.S. Dist. LEXIS 124361, at *4, also relied on

4    *Provencio v. Vazquez*, 258 F.R.D. 626, 640 (E.D. Cal. 2009).  *Provencio*

5    involved parents and not spouses.  *Provencio v. Vazquez*, 2007 U.S. Dist. LEXIS

6    40380, at *2-3 (E.D. Cal. June 4, 2007) ("Danny is the minor son of Daniel

7    Provencio, deceased ('decedent'). Nancy and Johnny are decedent's biological

8    parents.").

9        The district court in *Morales*, 852 F. Supp. 2d at 1274, relied on *Cosby*,

10   1997 U.S. Dist. LEXIS 24925, at *11 fn. 6, which in turn relied on *Smith v. City*

11   *of Fontana*, 818 F.2d 1411, 1417-20 (9th Cir. 1987), and *Smoot v. City of*

12   *Placentia*, 950 F.Supp. 282 (C.D. Cal.1997).  *Davila*, 2008 U.S. Dist. LEXIS

13   83785, at *18, also relied on *Smith*. Neither *Smith* nor *Smoot* involved spouses.

14   *Smith* involved children and *Smoot* involved a daughter and mother.  *Smith*, 818

15   F.3d at 1417-18; *Smoot*, 950 F.Supp. at 282-83.

16       The district court in *Lee* was the only court that analyzed whether spouses

17   have Fourteenth Amendment association rights under Supreme Court precedents

18   and declined to find they did in the absence Supreme Court or Ninth Circuit

19   recognition of the right.  This Court should follow *Lee*'s cautious approach and

20   conclude Diana Watts lack a Fourteenth Amendment right to familial association

21   with Watts.  That conclusion is consistent with both Supreme Court and Ninth

22   Circuit precedent.

23   **b.    Absence Of A Clearly Established Fourteenth Amendment Right Of**
**       Spouses To Familial Relations**

24

25       Even if Diana Watts has Fourteenth Amendment familial association rights

26   with Watts, that right was not clearly established at the time of Watts' death

27   (October 13, 2018) because "existing precedent [had not] placed the ...

28   constitutional question beyond debate."  *White v. Pauly*, 137 S.Ct. 548, 551

1   (2017).  "[P]rior precedent must be controlling-from the Ninth Circuit or

2   Supreme Court-or otherwise be embraced by a consensus of courts outside the

3   relevant jurisdiction." *Sharp v. Cty. Of Orange*, 871 F.3d 901, 911 (9th Cir.

4   2017) "Of course, 'district court decisions-unlike those from the courts of

5   appeals-do not necessarily settle constitutional standards or prevent repeated

6   claims of qualified immunity.'" *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th

7   Cir. 2016) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 (2011)); *see, e.g., A.B.*

8   *v. Cty. of San Diego*, 2020 U.S. Dist. LEXIS 182507, at *71 (S.D. Cal. Oct. 1,

9   2020) (finding district court decisions "cannot constitute clearly established

10  law").

11        The Supreme Court has never held spouses have familial association rights

12  under the Fourteenth Amendment.  Nor has the Ninth Circuit.  The only Circuit

13  Courts to address the issue declined to find such a right.  *See Niehus*, 973 F.2d

14  533-34; *Harbury*, 233 F.3d at 607.  Although district court decisions cannot

15  place a constitutional question beyond debate for purposes of qualified

16  immunity, *Hamby*, 821 F.3d at 1095, the discussion in the last section shows the

17  unsettled nature of the issue among district courts.

18        Indeed, a district court within the Ninth Circuit concluded the unsettled

19  nature of the issue compels a finding of qualified immunity.  *See Bach v. Idaho*

20  *State Bd. of Med.*, 2012 U.S. Dist. LEXIS 7043, at *19 (D. Idaho Jan. 20, 2012)

21  ("This analysis shows that courts have at least three different approaches to the

22  issue, and the parties have not cited any binding precedent from the Ninth Circuit

23  or the Supreme Court. Given this disarray in the law over the constitutional issue,

24  there was no 'clearly established' constitutional right to the companionship of a

25  spouse at the time Cindy Bach passed away. Accordingly, the defendants have

26  qualified immunity and Bach's § 1983 claim must be dismissed.").

27  ///

28  ///

1    This Court should likewise find the absence of clearly established law, as

2    the law is no clearer now than it was in 2012. *See Estate of Leng v. City of*

3    *Issaquah*, 2020 U.S. Dist. LEXIS 237720, at *6 (W.D. Wash. Dec. 17, 2020)

4    ("Whether Yang, as Leng's spouse, as opposed to his parent or child, may assert

5    a substantive due process claim for loss of companionship is unclear. *See Brown*

6    *v. Lambert*, [478] F. Supp. 3d [1006], 2020 U.S. Dist. LEXIS 145020, 2020 WL

7    4673103 at *8 (S.D. Cal. Aug. 12, 2020) (observing that the Ninth Circuit has

8    not yet explicitly acknowledged a Fourteenth Amendment right to familial

9    association with one's spouse).").

10   **D.  This Court Should Dismiss Plaintiffs' Fourth And Fifth Claims For
11       Relief Against The City Under Title II of the ADA and Section 504 Of
        The Rehabilitation Act**

12   ADA and Rehabilitation Act claims are analyzed the same.  *Vos v. City of*

13   *Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018).  To state a claim under

14   Title II of ADA claim or the Rehabilitation Act, a plaintiff must allege "(1) [s]he

15   is an individual with a disability; (2) [s]he is otherwise qualified to participate in

16   or receive the benefit of a public entities services, programs or activities; (3)

17   [s]he was either excluded from participation in or denied the benefits of the

18   public entity's services, programs or activities or was otherwise discriminated

19   against by the public entity; and (4) such exclusion, denial of benefits or

20   discrimination was by reason of her disability." *Id.*  Intentional discrimination by

21   the public entity is required for money damages.  *Ferguson v. City of Phoenix*,

22   157 F.3d 668, 674 (9th Cir. 1998).

23   Regarding law enforcement, the Ninth Circuit recognizes two types of

24   claims "(1) wrongful arrest, where police wrongly arrest someone with a

25   disability because they misperceive the effects of that disability as criminal

26   activity; and (2) reasonable accommodation, where, although police properly

27   investigate and arrest a person with a disability for a crime unrelated to that

28   disability, they fail to reasonably accommodate the person's disability in the

course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014)

**1.      Uncertain**

Plaintiffs' Title II and Rehab Act claims are not at all clear.  The allegations asserting the claims simply allege the elements.  *See* Doc. No. 10, ¶¶ 50-57, 61-62 [alleging elements of claims without specific facts].  Insufficient are the general factual allegations that defendants failed to summon other officers or medical professionals trained in de-escalating situations involving persons suffering from mental illness.  *Id.* at ¶ 17.  Also, the allegation could potentially invoke either theory of liability, so it is impossible to determine which of the two possible theories of liability plaintiffs are pursuing.  *Twombly*, 550 U.S. at 555.

**2.      Injunctive Relief Unavailable**

Plaintiffs do not seek injunctive relief under Title II.  Doc. No. 10, ¶¶ 55, 56; *id.* at pp. 25-26 (prayer).  Although not prayed for, plaintiffs do allege a right to injunctive (and declaratory) relief under the Rehab Act.  *Id.* at ¶64.  Assuming plaintiffs seek this relief, it is unavailable as it does not survive Watts' death. *Rohr v. Crime Victims Comp. Comm'n*, 2017 U.S. Dist. LEXIS 226189, at *8 (D. Haw. Sep. 29, 2017); *Meyers v. Cty. of Los Angeles*, 2011 U.S. Dist. LEXIS 152959, at *3-4 (C.D. Cal. Dec. 19, 2011), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 14749 (Feb. 6, 2012).

**3.      Insufficient Allegations Of Intentional Discrimination**

To recover compensatory damages, plaintiffs must allege facts establishing intentional discrimination. *Ferguson,* 157 F.3d at 674.  "To show intentional discrimination, this circuit requires that the plaintiff show that a defendant acted with deliberate indifference,' which requires 'both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood.' 'When the plaintiff has alerted the public entity to his need for

accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.' To meet the second prong, the entity's failure to act 'must be a result of conduct that is more than negligent, and involves an element of deliberateness.'" *Updike v. Multnomah Cty.*, 870 F.3d 939, 950-51 (9th Cir. 2017) (citations omitted).

Plaintiffs' complaint contains no factual allegations establishing deliberate indifference.  Plaintiffs simply allege in conclusory fashion that "defendants, and each of them, committed the acts and omissions alleged herein with intent and/or reckless disregard of Plaintiffs' rights as they had prior knowledge of Mr. Watts' mental disability."  Doc. No. 10, ¶¶54, 62.  No facts are alleged supporting this allegation.  Nor do plaintiffs allege facts establishing Watts' protected status "motivated a defendant's actions, at least in part. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003)."  *Moore v. Regents of the Univ. of Cal.,* 2016 U.S. Dist. LEXIS 167737, at *11 (N.D. Cal. Dec. 5, 2016.)

**E.    This Court Should Dismiss Plaintiffs' Sixth Claim For Wrongful Death Against Chief Kennedy And The City**

This claim is brought under California's Unruh Civil Rights Act (Cal. Civ. Code, § 51), California's Ralph Act (*id.* at § 51.7), California's Bane Act (*id.* at § 52) and California Disabled Persons Act (*id.* at § 54.1), and is brought by plaintiffs in their individual capacities and as successors in interest to Watts.  ECF Doc. No. 10, p. 19:19-23.

**1.    Unruh Civil Rights Act**

California Civil Code section 51 states: "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability[ or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business

29

1    establishments of every kind whatsoever."  Section 51 "allows recovery of

2    damages for discrimination by a '*business establishment*' in the course of

3    furnishing goods, services or facilities to its clients, patrons or customers."

4    *Carter v. City of Los Angeles*, 224 Cal.App.4th 808, 825 (2014) (emphasis

5    added).  A "business establishment" under the Unruh Act is one that "appears to

6    have been operating in a capacity that is the functional equivalent of a

7    commercial enterprise." *Warfield v. Peninsula Golf & Country Club*, 10 Cal.4th

8    594, 622 (1995); *Rubin v. City of Inglewood*, 2020 U.S. Dist. LEXIS 168059, at

9    *9 (C.D. Cal. July 17, 2020); *see Curran v. Mount Diablo Council of the Boy

10   Scouts*, 17 Cal.4th 670, 696 (1998).

11           Chief Kennedy is an individual, not a business establishment.  Moreover,

12   California appellate courts have uniformly held that public entities, like the City,

13   are not "business establishments" under the Unruh Civil Rights Act because they

14   are not commercial enterprises.  *See, e.g., Brennon B. v. Superior Court*, 57

15   Cal.App.5th 367, 369-93 (2020) (conducting exhaustive analysis of legislative

16   history and California Supreme Court precedents to conclude school district not a

17   "business establishment" under the Unruh Civil Rights Act), rev. granted

18   (2/24/2021, S266254); *Carter*, 224 Cal.App.4th at 825 ("We think a public entity

19   providing sidewalks and curbs to its citizens does so as a public servant, not a

20   commercial enterprise."); *Harrison v. City of Rancho Mirage*, 243 Cal.App.4th

21   162, 175-76 (2015) (a city is not a 'business establishment' for purposes of the

22   act); *Qualified Patients Assn. v. City of Anaheim*, 187 Cal.App.4th 734, 764

23   (2010) ("Because a city enacting legislation is not functioning as a 'business

24   establishment[ ],' we conclude the Unruh Act does not embrace plaintiffs' claims

25   against the city for discrimination based on a disability or medical condition

26   calling for the use of medical marijuana."); *Burnett v. San Francisco Police

27   Dep't*, 36 Cal.App.4th 1177, 1191-92 (1995) (holding that the Unruh Civil Rights

28   Act does not apply to legislative bodies); *see also Gregory v. Cty. of L.A.*, 2014

1    Cal. App. Unpub. LEXIS 8358, at *14 (Nov. 21, 2014) ("The legislative history

2    of the Unruh Civil Rights Act suggests the opposite result: local entities mainly

3    engaged in providing public services are not within the purview of the act.... If

4    [the Legislature] it wished to include local entities, it would have done so. As

5    desirable as it might be to include public facilities within the purview of the

6    Unruh Civil Rights Act, the power to do so lies with the Legislature, not the

7    courts.").

8        Federal district courts likewise conclude that public entities are not subject

9    to the Unruh Civil Rights Act because public entities are not "business

10    establishments." *See e.g.*, *Kohn v. State Bar of Cal.*, 497 F. Supp. 3d 526, 2020

11    U.S. Dist. LEXIS 199937, at *22 (N.D. Cal. Oct. 27, 2020) ("Plaintiff's claim

12    also fails because the Unruh Act only applies to 'business establishments,'

13    [citation], and California courts have held that government entities are not

14    'business establishments' and not subject to the Unruh Act [citation]."");

15    *Williams v. Cty. of Alameda*, 2018 U.S. Dist. LEXIS 185930, at *16 (N.D. Cal.

16    Oct. 30, 2018) ("The State of California, County of Alameda, the Board of

17    Supervisors of Alameda County, and Alameda Social Services Agency (the

18    'government entities') are not 'business establishments' in general because the

19    nature, purpose, and structure of each entity are that of a public servant."); *see*

20    *also Shatford v. L.A. Cty*, 2016 U.S. Dist. LEXIS 52473, at *60-61 (C.D. Cal.

21    Mar. 29, 2016) ("The Court has not found any authority for the proposition that a

22    local government entity such as the County or the LASD qualifies as a 'business

23    establishment' under the Unruh Civil Rights Act.").

24        As Judge Whelan explained, "to construe a police department as a

25    business establishment within the ambit of section 51," "would contradict both

26    the plain meaning of the statutory language and compelling authority from the

27    California Supreme Court and the California Courts of Appeal interpreting that

28    language. A police department is unrelated to the promotion or advancement of

1    economic or business interests. It is not a business establishment." *Orff v. City of*

2    *Imperial*, 2017 U.S. Dist. LEXIS 90104, at *19-20 (S.D. Cal. June 12, 2017)

3    (citations omitted).

4    **2.    Ralph Act**

5         "In order to establish a Ralph Act claim, a plaintiff must show (1) the

6    defendant threatened or committed violent acts against the plaintiff; (2) the

7    defendant was motivated by his perception of plaintiff's [mental disability]; (3)

8    the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor

9    in causing the plaintiff's harm. *Young v. Cty. of San Diego*, 2021 U.S. Dist.

10   LEXIS 53564, at *15 (S.D. Cal. Mar. 22, 2021) (quotation and citation marks

11   omitted); *see* Cal. Civ. Code §§ 51.7(a), 51(b).

12        Plaintiffs allege no facts establishing they were personally subject to

13   conduct violating the Ralph Act.  Their individual capacity claims thus fail.  The

14   claim on behalf of Watts against Chief Kennedy fails because she had no

15   interaction with Watts.  The claim against the City fails because plaintiffs allege

16   no facts establishing any Watts' mental illness motivated any officer conduct.

17   **3.    Bane Act**

18        The Bane Act provides a private cause of action against anyone who

19   "interferes by threats, intimidation, or coercion, or attempts to interfere by

20   threats, intimidation, or coercion, with the exercise or enjoyment by an

21   individual or individuals of rights secured by the Constitution or laws of the

22   United States, or laws and rights secured by the Constitution or laws of

23   California." Cal. Civ. Code, § 52.1(a).  "Section 52.1 requires an attempted or

24   completed act of interference with a legal right, accompanied by a form of

25   coercion. The essence of a Bane Act claim is that the defendant, by the specified

26   improper means (i.e., threats, intimidation or coercion), tried to or did prevent the

27   ///

28   ///

plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Young*, 2021 U.S. Dist. LEXIS 53564, at *16-17.

Plaintiffs allege no facts establishing they were personally subject to conduct violating the Bane Act.  Their individual capacity claims thus fail.  The claim on behalf of Watts against Chief Kennedy fails because she had no interaction with Watts.

### 4.    Disabled Persons Act

Under the Disabled Persons Act, "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, ... places of public accommodation, amusement, or resort, and other places to which the general public is invited...." Cal. Civ. Code, § 54.1.  "It specifically provides that individuals with disabilities will have 'full and free use of the streets, highways, sidewalks, walkways, ..., and other public places. *Id.* at § 54. Notably, the DPA is concerned solely with guaranteeing physical access to public spaces and not denial of services. *Wilkins-Jones v. Cnty. of Alameda*, 859 F.Supp.2d, 1039, 1055 (N.D. Cal. 2012)." *Montoya v. City of San Diego*, 434 F.Supp.3d 830, 848-49 (S.D. Cal. 2020).

Plaintiffs do not allege being personally denied access to any public space. Nor do they allege Watts was denied access.  Plaintiffs' claims thus fail in both their individual capacities and as Watts' successor in interest.

### F.    This Court Should Dismiss Plaintiffs' Eighth Claim For Relief Against The City And Chief Kennedy for Battery

Plaintiffs fail to allege the required a statutory basis for liability against the City.  Cal. Gov. Code, § 815 (public entity liability statutory);  *Mora v. City of Chula Vista*, 2021 U.S. Dist. LEXIS 57948, at *12-13 (S.D. Cal. Mar. 25, 2021). Plaintiffs fail to allege a battery claim against Chief Kennedy because they do not allege she touched Watts in a harmful or offensive way. *See Tekle v. United States*,

511 F.3d 839, 855 (9th Cir. 2006) (elements of battery); *J.K.G. v. Cty. of San Diego*, 2011 U.S. Dist. LEXIS 126907, at \*26-28 (S.D. Cal. Nov. 2, 2011).

**G.    This Court Should Dismiss Plaintiffs' Ninth Claim For Relief Against The City And Chief Kennedy for Negligence**

Common law negligence claim cannot be maintained against the City. *McCarty v. State of California Dep't of Transp.,* 164 Cal.App.4th 955, 977 (2008); *Estate of Wilson v. Cty. of San Diego*, 2020 U.S. Dist. LEXIS 121662, at \*20 (S.D. Cal. July 10, 2020.)

Plaintiffs bring this claim on their own behalf and for Watts.  Doc. No. 10, p. 21:20-25.  Plaintiffs fail to allege any facts establishing Chief Kennedy owed them a duty of care, a breach of which caused plaintiffs damages as individuals. *See Vasilenko v. Grace Family Church*, 3 Cal.5th 1077, 1083 (2017) (elements of negligence claim).  The same is true for Watts.

**H.    This Court Should Dismiss Plaintiffs' Claim For Punitive Damages Against Chief Kennedy**

Plaintiffs seek punitive damages against Chief Kennedy pursuant to their first, second and third claims for relief under section 1983 and California law. *See* Doc. No. 10, ¶¶ 31, 39, 47, 69, 80; *id.* at p. 26 (seeking "exemplary and punitive damages against the individual Defendants").

Regarding plaintiffs' individual capacity claims, punitive damages are not recoverable in a statutory wrongful death action like this one.  *Boeken v. Phillip Morris USA, Inc.*, 48 Cal.4th 788, 798 (2010).  Even if they were, plaintiffs fail to allege facts establishing Chief Kennedy engaged in malicious, oppressive, or fraudulent conduct.  *See* Cal. Civ. Code, § 3294.  Plaintiffs further fail to allege facts establishing Chief Kennedy engaged in conduct "motivated by evil motive

///

///

///

34

1 | or intent" or "reckless or callous indifference." *Smith v. Wade*, 461 U.S. 30, 56
2 | (1983). For these same pleading deficiencies, a punitive damage claim
3 | maintained by plaintiffs on Watts' behalf fails.

## CONCLUSION

5 |     For the reasons above, this Court should grant the motions to dismiss.

7 | Dated: June 4, 2021                 Dean Gazzo Roistacher LLP

By:  */s/ Lee H. Roistacher*
       Mitchell D. Dean
       Lee H. Roistacher
       Heather E. Paradis
       Attorneys for Defendant
       City of Chula Vista and Roxana
       Kennedy

35