1  CHRISTOPHER J. OLSEN, SBN: 109124
3075 East Thousand Oaks Boulevard
2  Suite 100
Westlake Village, California 91362
3  Tel: (805)557-0660  Fax: (805)491-8324
E-mail: cjolaw@aol.com
4

5  Attorney for Plaintiffs
DIANA C. WATTS and ODIN H. WATTS, a minor, by and through his Guardian Ad Litem,
6  DIANA C. WATTS

7  **IN THE UNITED STATES DISTRICT COURT**

8  **SOUTHERN DISTRICT OF CALIFORNIA**

9

10  DIANA C. WATTS and ODIN H. WATTS, a    ) Case No.: 21-cv-00581-CAB-WVG
minor, by and through his Guardian Ad Litem,    )
11  DIANA C. WATTS,    ) **SECOND AMENDED COMPLAINT FOR**
    ) **DAMAGES**
12      )
    ) 1.  Unreasonable Use of Deadly Force (42
13                  Plaintiffs,    )     U.S.C. § 1983);
    ) 2.  Deprivation of Life Without Due Process
14      vs.    )     (42 U.S.C. § 1983);
    ) 3.  Interference with Parent-Child
15      )     Relationship (42 U.S.C. § 1983);
    ) 4.  Wrongful Death (Cal. Civ. Proc. Code §
16  CITY OF CHULA VISTA, ROXANA    )     377.60);
KENNEDY, COUNTY OF SAN DIEGO,    ) 5.  Negligence;
17  BOARD OF TRUSTEES OF UNIVERSITY OF )  6.  Wrongful Death (Cal. Civ. Proc. Code §
CALIFORNIA, SAN DIEGO, BRITTANY    )     377.60);
18  SCHOFER, individually, THOMAS LUHTA,    ) 7.  Negligence
individually, MARK MEREDITH, individually, )
19  JUAN MANIBUSAN, individually, BRYAN    ) **DEMAND FOR JURY TRIAL**
JACKSON, individually, GINGER VAN    )
20  HOUGHTON, individually, CHRISTOPHER    )
BEARSS, individually, MARIO PEREIRA,    )
21  individually, JOSE AGUAYO, individually, S.    )
O'CONNELL individually, DOES 11 to 200,    )
22      )
    )
23                  Defendants.    )
    )
24      )
    )
25  _____ )

26          Plaintiffs DIANA C. WATTS and ODIN H. WATTS, a minor by and through his Guardian

27  ad Litem, DIANA C. WATTS, upon information and belief, allege the following:

28

1

21-cv-00581-CAB-WVG

**INTRODUCTION**

1. This case challenges the unjustified killing of Jason Alan Watts ("Mr. Watts"), the husband of Plaintiff DIANA C. WATTS and the father of Plaintiff ODIN H. WATTS, a minor by Defendant officers of the Chula Vista Police Department ("CVPD"). Mr. Watts suffered from significant mental illness, including without limitation ADHD.  At the time of the subject incident, Mr. Watts was unarmed and experiencing an episode of severe psychological distress.  Prior to engaging in the conduct that ultimately led to Mr. Watts' death, Mr. Watts clearly exhibited to said Defendant officers of the CVPD conduct consistent with severe psychological distress and/or a psychotic break; therefore, said Defendant officers were on notice that Mr. Watts was then suffering from a mental illness, condition, disability, and/or breakdown, and was then experiencing a severe psychotic break and/or other severe psychological distress and was substantially disabled by reason thereof.  Plaintiffs allege that said Defendant officers went to the 7-11 store located at or about 403 Third Avenue, Chula Vista, California, after having been called both by 7-11 staff and by Mr. Watts himself, and that Mr. Watts expressed in his 911 call to CVPD, and to said Defendant officers at said 7-11 store, that he was extremely fearful that persons waiting outside the 7-11 store intended to kill him, that he had taken refuge inside said 7-11 store, and persisted in his stated, but factually inaccurate, belief that said persons were still waiting outside the 7-11 store to kill him despite the presence of said Defendant officers.  During this encounter, and in a heightened state of fear and mental disability, decedent became even more fearful and ran behind the counter of the 7-11 store as a consequence thereof, in order to protect himself from said perceived killers waiting for him outside.  Although Mr. Watts was unarmed and was clearly in a state of profound fear and mental disability, said Defendant officers failed to stabilize the situation and failed to summon officers and/or other professionals trained and experienced in de-escalating situations involving persons suffering from mental illnesses, conditions, disabilities, and/or breakdowns, or to otherwise calm Mr. Watts and obtain his cooperation by non-traumatic means. Instead, despite that Mr. Watts was not a danger to himself or others, said Defendant officers needlessly escalated the situation by proceeding to use pepper spray, tasers, and other violent and harmful techniques and methodologies to violently attack Mr. Watts in order to compel his cooperation, which such violent conduct,

21-cv-00581-CAB-WVG

1    techniques, and methodologies ultimately resulted in Mr. Watts' death several hours later. After so

2    attacking him, the aforesaid Defendant officers of the CVPD thereupon took Mr. Watts into

3    custody.  The use of force, including deadly force, against Mr. Watts was unnecessary,

4    unconstitutional and violated clearly established law that would have been known to any reasonable

5    police officer.

6                            **JURISDICTION AND VENUE**

7        2.    This case arises under 42 U.S.C. § 1983, The Americans with Disabilities Act, Section

8    504 of the Rehabilitation Act and California law. This Court has subject matter jurisdiction over

9    this action pursuant to 28 U.S.C. § 1331. This Court has subject matter jurisdiction over Plaintiffs'

10   supplemental state law claims pursuant to 28 U.S.C. § 1367.

11       3.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (e) in that

12   (1) unlawful actions challenged herein occurred in this Judicial District and (2) all Defendants

13   reside in this Judicial District.

14                               **THE PARTIES**

15       4.    Plaintiffs Diana C. Watts and Odin H. Watts, a minor, bring this action individually

16   and as heirs and the sole successors-in-interest to Jason Alan Watts, husband of Plaintiff Diana C.

17   Watts and natural father of Odin H. Watts, a minor ("Mr. Watts").  Plaintiffs assert all survival

18   claims and rights under California law, which survive Mr. Watts' death pursuant to California Code

19   of Civil Procedure §§ 377.30 and 377.60, and any survival claims they may bring under 42 U.S.C.

20   § 1983, The Americans with Disabilities Act and Section 504 of the Rehabilitation Act in their

21   capacities as the successors-in-interest to Mr. Watts. Plaintiffs have served and filed concurrently

22   herewith a declaration pursuant to California *Civil Code* § 377.32 establishing their standing to

23   bring this action.

24       5.    At all relevant times, Mr. Watts was a resident of Chula Vista, County of San Diego,

25   State of California.  Plaintiff Diana C. Watts is currently a resident of the State of California.

26   Plaintiff Odin H. Watts, a minor, is currently a resident of the State of Nebraska.

27       6.    Plaintiffs are informed and believe and thereon allege that at all relevant times CITY

28   OF CHULA VISTA was a duly chartered and established public municipal entity organized under

                                      3

                                                          21-cv-00581-CAB-WVG

1  the laws of the State of California, and within the meaning of Title II of the ADA and has received

2  federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, and was

3  located within in the County of San Diego, State of California.  Plaintiffs are further informed and

4  believe and thereon allege that at all relevant times CITY OF CHULA VISTA owned, operated,

5  and maintained the Chula Vista Police Department ("CVPD") as the duly-constituted law

6  enforcement agency in and for the CITY OF CHULA VISTA, and that at all relevant time CVPD

7  acted in all respects in accordance with and pursuant to all applicable rules and policies

8  promulgated by the CITY OF CHULA VISTA, and with the express and/or implied authorization,

9  consent, and ratification of CITY OF CHULA VISTA.

10      7.    Plaintiffs are informed and believe and thereon allege that at all relevant times

11  Defendant COUNTY OF SAN DIEGO was a duly chartered and established public municipal

12  entity organized under the laws of the State of California, and within the meaning of Title II of the

13  ADA and has received federal financial assistance within the meaning of Section 504 of the

14  Rehabilitation Act.

15      8.    Plaintiffs are informed and believe and thereon allege that at all relevant times

16  Defendant REGENTS OF THE UNIVERSITY OF CALIFORNIA (erroneously sued as BOARD

17  OF TRUSTEES OF UNIVERSITY OF CALIFORNIA, SAN DIEGO), was a public entity

18  organized under the laws of the State of California, and within the meaning of Title II of the ADA

19  and has received federal financial assistance within the meaning of Section 504 of the

20  Rehabilitation Act.

21      9.    Plaintiffs are informed and believe and thereon allege that at all relevant times

22  Defendant BRITTANY SCHOFER (hereinafter "SCHOFER") (formerly sued as "DOE 1") was a

23  duly authorized officer and employee of the CVPD, was at all relevant times acting under the

24  authority thereof, was at all relevant times acting under the color of law within the curse and scope

25  of her respective duties as a CVPD officer, and with the complete authority and ratification of the

26  CVPD.

27      10.   Plaintiffs are informed and believe and thereon allege that at all relevant times

28  Defendant THOMAS LUHTA (hereinafter "LUHTA") (formerly sued as "DOE 2") was a duly

4

21-cv-00581-CAB-WVG

1  authorized officer and employee of the CVPD, was at all relevant times acting under the authority

2  thereof, was at all relevant times acting under the color of law within the curse and scope of his

3  respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

4      11.  Plaintiffs are informed and believe and thereon allege that at all relevant times

5  Defendant MARK MEREDITH (hereinafter "MEREDITH") (formerly sued as "DOE 3") was a

6  duly authorized officer and employee of the CVPD holding the rank and responsibilities of

7  Sergeant, was at all relevant times acting under the authority thereof, was at all relevant times

8  acting under the color of law within the curse and scope of his respective duties as a CVPD officer,

9  and with the complete authority and ratification of the CVPD.

10     12.  Plaintiffs are informed and believe and thereon allege that at all relevant times

11 Defendant JUAN MANIBUSAN (hereinafter "MANIBUSAN") (formerly sued as "DOE 4") was a

12 duly authorized officer and employee of the CVPD, was at all relevant times acting under the

13 authority thereof, was at all relevant times acting under the color of law within the curse and scope

14 of his respective duties as a CVPD officer, and with the complete authority and ratification of the

15 CVPD.

16     13.  Plaintiffs are informed and believe and thereon allege that at all relevant times

17 Defendant BRYAN JACKSON (hereinafter "JACKSON") (formerly sued as "DOE 5") was a duly

18 authorized officer and employee of the CVPD holding the rank and responsibilities of Agent, was

19 at all relevant times acting under the authority thereof, was at all relevant times acting under the

20 color of law within the curse and scope of his respective duties as a CVPD officer, and with the

21 complete authority and ratification of the CVPD.

22     14.  Plaintiffs are informed and believe and thereon allege that at all relevant times

23 Defendant GINGER VAN HOUGHTON (hereinafter "VAN HOUGHTON") (formerly sued as

24 "DOE 6") was a duly authorized officer and employee of the CVPD, was at all relevant times

25 acting under the authority thereof, was at all relevant times acting under the color of law within the

26 curse and scope of her respective duties as a CVPD officer, and with the complete authority and

27 ratification of the CVPD.

28     15.  Plaintiffs are informed and believe and thereon allege that at all relevant times

5

21-cv-00581-CAB-WVG

1  Defendant CHRISTOPHER BEARSS (hereinafter "BEARSS") (formerly sued as "DOE 7") was a

2  duly authorized officer and employee of the CVPD, was at all relevant times acting under the

3  authority thereof, was at all relevant times acting under the color of law within the curse and scope

4  of his respective duties as a CVPD officer, and with the complete authority and ratification of the

5  CVPD.

6      16.  Plaintiffs are informed and believe and thereon allege that at all relevant times

7  Defendant MARIO PEREIRA (hereinafter "PEREIRA") (formerly sued as "DOE 8") was a duly

8  authorized officer and employee of the CVPD, was at all relevant times acting under the authority

9  thereof, was at all relevant times acting under the color of law within the curse and scope of his

10  respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

11      17.  Plaintiffs are informed and believe and thereon allege that at all relevant times

12  Defendant JOSE AGUAYO (hereinafter "AGUAYO") (formerly sued as "DOE 9") was a duly

13  authorized officer and employee of the CVPD, was at all relevant times acting under the authority

14  thereof, was at all relevant times acting under the color of law within the curse and scope of his

15  respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

16      18.  Plaintiffs are informed and believe and thereon allege that at all relevant times

17  Defendant S. O'CONNELL (hereinafter "O'CONNELL") (formerly sued as "DOE 10") was a duly

18  authorized employee and specialty clinician of the CVPD assigned to its Psychiatric Emergency

19  Response Team ("PERT"), was at all relevant times acting under the authority thereof, was at all

20  relevant times acting under the color of law within the curse and scope of her respective duties as a

21  specialty clinician within the PERT unit of CVPD, and with the complete authority and ratification

22  of the CVPD.

23      19.  Plaintiffs are informed and believe and thereon allege that at all relevant times

24  Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN

25  MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS,

26  MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and Defendants DOES 11 through 100,

27  inclusive, were duly authorized officers, sergeants, agents, supervisors, and/or managers of the

28  CVPD and agents and employees of the CITY OF CHULA VISTA, and were directly involved in

21-cv-00581-CAB-WVG

1    escalating the encounters that resulted in the death of Mr. Watts. Plaintiffs are informed and believe

2    and thereon allege that at all relevant times said Defendants acted with the complete authority and

3    ratification of CITY OF CHULA VISTA and CVPD.

4        20.   The true names of Defendants DOES 11 through 200, inclusive, are unknown to

5    Plaintiffs at this time. Plaintiffs will seek leave to amend this complaint to show the true names and

6    capacities of these Defendants when they have been ascertained. Plaintiffs are informed and believe

7    and thereon allege that each of the fictitiously-named Defendants is responsible for some part of the

8    conduct, liabilities and damages alleged herein.

9        21.   Defendant COUNTY OF SAN DIEGO, Defendant REGENTS OF THE UNIVERSITY

10   OF CALIFORNIA (erroneously sued as BOARD OF TRUSTEES OF UNIVERSITY OF

11   CALIFORNIA, SAN DIEGO), and Defendants DOES 11 through 200, inclusive, are "persons"

12   subject to suit within the meaning of 42 U.S.C. § 1983 under *Monell v. New York Department of*

13   *Social Services*, 436 U.S. 658, 691 (1978).  Under California Government Code § 815.2,

14   Defendants are liable for any and all wrongful acts in violation of state law hereinafter complained

15   of and committed by any of the employees of Defendant COUNTY OF SAN DIEGO, Defendant

16   REGENTS OF THE UNIVERSITY OF CALIFORNIA (erroneously sued as BOARD OF

17   TRUSTEES OF UNIVERSITY OF CALIFORNIA, SAN DIEGO), and Defendants DOES 11

18   through 200, inclusive, and each of them, acting within the course and scope of their employment.

19       22.   Plaintiffs are informed and believe and thereon allege that each Defendant is, and at all

20   times mentioned, was the agent, employee, representative, successor and/or assignee of each other

21   Defendant. Each Defendant, in doing the acts, or in omitting to act as alleged in this Complaint,

22   was acting within the scope of his or her actual or apparent authority, or the alleged acts and

23   omissions of each Defendant agent subsequently were ratified and adopted by each other Defendant

24   as principal. Plaintiffs are informed and believe and thereon allege that each of the individual

25   Defendants were in some way responsible for the constitutional violations and torts alleged in this

26   Complaint.

27       23.   Plaintiffs are informed and believe and thereon allege that all Defendants, at all times

28   relevant to the allegations herein, acted under the color of state law. Each non-government entity

21-cv-00581-CAB-WVG

Defendant is sued in his or her individual capacity only. Liability under California law for all government employees is based upon, among other things, California Civil Code Sections 43, 51, 51.7, 52, 52.1, 54.1, 377.30, and 377.60; Government Code Section 815.2; and Penal Code Sections 149, 240 and/or 242. Liability under federal law for all government entity employees is based upon 42 U.S.C. § 1983. Liability for the BOARD OF TRUSTEES OF UNIVERSITY OF CALIFORNIA, SAN DIEGO is based upon 42 U.S.C. § 1983, the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*) and Section 504 of the Rehabilitation Act (29 U.S.C. § 794 et seq.). Plaintiffs timely filed tort claims with CITY OF CHULA VISTA, COUNTY OF SAN DIEGO, and UNIVERSITY OF CALIFORNIA, SAN DIEGO and have complied with the requirements of the California Tort Claims Act.

24.   In committing the acts alleged in this Complaint, Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, inclusive, and each of them, acted knowingly, maliciously, and with reckless or callous disregard for the constitutional rights of Plaintiffs and of Mr. Watts, justifying an award of punitive damages under Federal and California law against each individual defendant.

## FACTUAL ALLEGATIONS

25.   According to the records of CVPD, on or about October 12, 2018, at approximately 8:38 AM, in Chula Vista, California, officers of the CVPD were called to the residence of the aunt of the decedent, Jason Alan Watts, located at 1190 Myra Avenue, Chula Vista, California 91911, who reported that Watts had come to her residence, was "not making sense," that he was "making irrational comments," and that she was scared of him. Watts had further reportedly stated that he was being pursued by "the cartel," who wanted to kill him, that he was filthy and unkempt, and that he looked like he had not slept in five days. Defendants BEARSS and PEREIRA initially responded to this call, and after speaking with Watts and his aunt, called for assistance from SVPD's PERT unit, to which Defendants AGUAYO and PERT Clinician O'CONNELL responded and further interviewed Watts. PERT Clinician O'CONNELL ultimately evaluated Watts as not meeting criteria for a hold pursuant to California *Welfare and Institutions Cod*e § 5150. Defendants

1    BEARSS, PEREIRA, AGUAYO, and O'CONNELL left the 1190 Myra Avenue location without

2    taking Watts into custody or having him transported for further medical/mental health evaluations

3    to determine whether he would benefit from a Section 5150 hold, and simply left Watts to his own

4    devices. This decision would lead to Watts' condition and behavior worsening throughout the day,

5    and ultimately to his death.

6        26.   On or about October 12, 2018, at approximately 11:30 PM, in Chula Vista, California,

7    Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN,

8    BRYAN JACKSON, GINGER VAN HOUGHTON and DOES 11 through 100, and each of them,

9    officers of the CVPD, encountered the decedent, Jason Alan Watts, at a 7-11 store located at or

10   about 403 Third Avenue, Chula Vista, California. At said time, Mr. Watts was then suffering from

11   a severe mental illness, condition, disability, and/or breakdown, in addition to, apparently, having

12   ingested controlled substance(s) that further altered his consciousness and ability to accurately

13   perceive events around him. In fact, Mr. Watts had repeatedly entered and exited the 7-11 store

14   without incident, becoming more and more confused and fearful, and believing that persons with

15   guns were pursuing him and lying in wait with the intent of killing him. At one point, Mr. Watts

16   requested of the 7-11 clerk that he be allowed to use the business' telephone, whereupon he himself

17   called CVPD asking for help and protection from these perceived but nonexistent threats, which

18   were delusions arising from the profound mental breakdown that he was experiencing. As Mr.

19   Watts became increasing afraid and paranoid, the 7-11 clerk became concerned and called CVPD.

20   Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN,

21   BRYAN JACKSON, GINGER VAN HOUGHTON and DOES 11 through 100, and each of them, were

22   dispatched to the scene, along with another CVPD Officer, Andrea Mayorga, who apparently

23   observed the unfolding scene from outside the 7-11 and attempted to gather information from

24   homeless individuals congregating nearby and one or more individuals at a nearby hotel which Mr.

25   Watts had previously entered. Whereas CVPD had dispatched Defendant Clinician O'CONNELL

26   to the encounter with Mr. Watts at the 1190 Myra Avenue address earlier that same day, no

27   clinician or other member of CVPD's PERT team was dispatched to the 7-11 at any point during

28   this profound breakdown experienced by Mr. Watts. Instead, Defendants BRITTANY SCHOFER

21-cv-00581-CAB-WVG

1  and THOMAS LUHTA, approached Mr. Watts in an aggressive and intimidating manner, which was

2  clearly perceived by Mr. Watts as a grave threat to his life and safety. In his clearly confused and

3  disoriented state, as Defendant THOMAS LUHTA approached Mr. Watts near the door to the 7-11,

4  Mr. Watts yelled "Check the freezers! Check the freezers!" then ran at full speed back into the 7-11

5  and behind the counter where 7-11 employees worked, clearly taking refuge from a perceived but

6  nonexistent threat. Defendant THOMAS LUHTA would later describe Mr. Watts as 'acting

7  strangely,' and that he had "red bloodshot eyes, dried blood in his mouth, and his face was filthy,"

8  and that he 'just stared blankly.' Despite that Mr. Watts was clearly in the midst of a profound

9  delusion and mental breakdown, was extremely fearful, paranoid, agitated, confused, and

10 disoriented, Defendant THOMAS LUHTA began issuing commands to Mr. Watts which he did not

11 follow, whereupon Defendant THOMAS LUHTA drew his firearm, and Defendant BRITTANY

12 SCHOFER approached and drew her taser.  Defendants Sergeant MARK MEREDITH, Officer

13 JUAN MANIBUSAN, Agent BRYAN JACKSON, Officer GINGER VAN HOUGHTON and DOES 11

14 through 100, and each of them, arrived and joined in attempting to violently and physically subdue

15 Mr. Watts. Over the next several minutes, Mr. Watts was repeatedly shot by said Defendants and

16 electrocuted with four separate tasers, was stuck with fists, batons, sprayed in the face with pepper

17 spray, all causing him to begin to vomit uncontrollably, and then once being swarmed and

18 physically subdued from all movement by a throng of 4-6 officers, was placed in a physical

19 restraint system known as a "WRAP," and a device known as a "spit bag" was placed over his

20 mouth and nose, in which he had no freedom of movement and in which his breathing was

21 restricted. Mr. Watts' fear, anxiety, and paranoia increased exponentially.

22      27.  At no point during the encounter at 7-11 between Mr. Watts and Defendants

23 BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN

24 JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, did any

25 officer or employee of CVPD ever make any attempt to ascertain Mr. Watts' mental status, nor did

26 any officer or employee of CVPD ever summon officers and/or other professionals trained and

27 experienced in de-escalating situations involving persons suffering from mental illnesses,

28 conditions, disabilities, and/or breakdowns – such as one of more members of CVPD's PERT unit

21-cv-00581-CAB-WVG

1    that had encountered, evaluated, and inaccurately determined that Mr. Watts did not meet the

2    criteria for a Section 5150 hold – or to otherwise obtain Mr. Watts' cooperation by less traumatic

3    means. Defendants Sergeant MARK MEREDITH, Officer JUAN MANIBUSAN, Agent BRYAN

4    JACKSON, Officer GINGER VAN HOUGHTON and DOES 11 through 100, and each of them,

5    thereupon took Mr. Watts into custody.

6        28.  In fact, had Defendants BEARSS, PEREIRA, AGUAYO, and O'CONNELL correctly

7    assessed Mr. Watts' downward-spiraling condition earlier the same day after his family had called

8    on CVPD for help and placed him on a Section 5150 hold, rather than abandoning him to his own

9    devices in his worsening state, the disastrous encounter at 7-11 would never have occurred and Mr.

10   Watts would likely be alive today.

11       29.  Plaintiffs are informed and believe and based thereon allege that during said encounter

12   at 7-11, Defendants Sergeant MARK MEREDITH and Agent BRYAN JACKSON had a

13   conversation wherein both agreed that the decedent, Mr. Watts, appeared to be suffering from

14   "excited delirium." Excited delirium is a condition well-known to law enforcement and medical

15   personnel to be a complex neuropsychiatric syndrome that is characterized by disturbances in

16   consciousness, orientation, memory, thought, perception, and behavior, including agitation,

17   aggression, and acute distress resulting from or more structural and/or physiological abnormalities

18   directly or indirectly affecting the brain, and is associated with high rates of sudden death, often in

19   the pre-hospital care setting. Plaintiffs are informed and believe and based thereon allege that the

20   awareness that Mr. Watts was suffering from excited delirium was communicated and/or otherwise

21   known to Defendants BRITTANY SCHOFER, THOMAS LUHTA, JUAN MANIBUSAN, GINGER

22   VAN HOUGHTON, and DOES 11 through 100, and each of them. Despite recognizing what would

23   ultimately cause Mr. Watts to die several hours later, not one of said Defendants acted to minimize

24   the stress experienced by Mr. Watts, to seek and obtain medical care specifically to address and

25   control this advancing condition, and instead treated Mr. Watts like an ordinary criminal who was

26   simply being uncooperative. Defendant THOMAS LUHTA would later state to interviewers

27   concerning the incident "In my mind, I was thinking why didn't you just do what we told you to

28   do? It didn't have to get to the point was at had he complied with the orders," evidencing said

21-cv-00581-CAB-WVG

1    Defendants' commitment to the false notion that a severely mentally-ill man in the midst of a

2    profound mental breakdown and suffering from obvious, severe paranoia and delusions could

3    understand and rationally comply with commands.

4        30.  Defendants Officer MARK MEREDITH, Officer JUAN MANIBUSAN, Agent BRYAN

5    JACKSON, Officer GINGER VAN HOUGHTON and DOES 11 through 100, and each of them, called

6    paramedics to the scene to evaluate the decedent after he continued to exhibit the effects of the

7    aforesaid mental illness, condition, disability, and/or breakdown following his arrest, who

8    ultimately transported the decedent in the early hours of October 13, 2018, to Paradise Valley

9    Hospital, where he was evaluated and deemed suitable for incarceration.  Defendants Officer

10   MARK MEREDITH, Officer JUAN MANIBUSAN, Agent BRYAN JACKSON, Officer GINGER VAN

11   HOUGHTON and DOES 11 through 100, and each of them, then transported the decedent to the

12   COUNTY OF SAN DIEGO Men's Central Detention Facility, operated by Defendant COUNTY

13   OF SAN DIEGO through its duly-authorized law enforcement agency, the San Diego County

14   Sheriff's Department.  While in the process of being booked into the COUNTY OF SAN DIEGO

15   Men's Central Detention Facility, Mr. Watts' medical condition began to further deteriorate rapidly,

16   and, and he was subsequently transported by ambulance to the University of California at San

17   Diego (UCSD) Medical Center.  Once at the UCSD Medical Center, Mr. Watts suffered additional

18   medical complications and vital system shutdown associated with his excited delirium, and he was

19   pronounced dead at or about 12:21 P.M. on October 13, 2018.

20       31.  Plaintiffs are informed and believe and thereon allege that prior to violently attacking

21   Mr. Watts as aforesaid, Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH,

22   JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100,

23   and each of them, were aware that that Mr. Watts was quite obviously then suffering from a mental

24   illness, condition, disability, and/or breakdown, and was then experiencing a severe psychotic break

25   and/or other severe psychological distress and was substantially disabled by reason thereof, yet did

26   not conduct the aforesaid encounter with Mr. Watts any differently than a criminal suspect.  Mr.

27   Watts was not in possession of any weapon at any time during said encounter. At all times,

28   Defendants were unaware or deliberately did not consider that they could seek any professional

21-cv-00581-CAB-WVG

1   assistance and had no policies, procedures, or training on contacting a mental health professional

2   when dealing with an individual in psychological distress.

3       32.  Instead, Defendants needlessly escalated the situation by proceeding to use pepper

4   spray, tasers, fists, batons, and other violent and harmful techniques and methodologies to violently

5   attack Mr. Watts in order to compel his cooperation, which such violent conduct, techniques, and

6   methodologies only served to further escalate the severity of Mr. Watts' mental distress, confusion,

7   and excited delirium, and ultimately resulted in his death several hours later.

8       33.  The lack by Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH,

9   JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100,

10  and each of them, of having received from CVPD training in the protocols, procedures and policies

11  regarding encountering individuals with mental disabilities or emotional disturbance directly

12  contributed to and impacted their failure to plan or create any less extreme and/or de-escalating

13  course of action prior to attacking Mr. Watts.

14      34.  At the time of the aforesaid attack, Mr. Watts was unarmed and suffering through an

15  episode of extreme psychological distress and mental illness. The use of what was ultimately

16  deadly force in this case was unreasonable and excessive given that Defendants BRITTANY

17  SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER

18  VAN HOUGHTON, and DOES 11 through 100, and each of them, knew that Mr. Watts was

19  obviously suffering through an episode of extreme psychological distress, mental illness, confusion,

20  and delusion, as Mr. Watts had himself called CVPD for help based on his fear that persons were

21  waiting outside the 7-11 store to kill him, and that the presence threat of said Defendants as armed,

22  uniformed police officers did not itself persuade him that he was safe from the deadly but

23  nonexistent harm he feared by reason of his severe mental illness, condition, disability, breakdown,

24  and other severe psychological distress, and his substantially disability by reason thereof.

25  Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN,

26  BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them,

27  failed to: use proper procedures in responding to a situation involving a mentally or emotionally

28  disturbed person; seek any assistance, before or during the incident, from mental health officials or

13

21-cv-00581-CAB-WVG

1  a crisis intervention team, wait for back up, and/or call or wait for the arrival of Mr. Watts' family,

2  relatives and/or friends who could have helped to defuse the situation. Instead, the officers

3  unreasonably escalated the level of tension and acted violently without cause, resorting to

4  unnecessary and excessive force to subdue Mr. Watts and used ultimately deadly force, which was

5  excessive and unreasonable under the circumstances.

6      35.  Plaintiffs allege that the aforesaid officers and employees of CVPD, including without

7  limitation Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN

8  MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each

9  of them, were negligently and inadequately trained, hired, retained and/or supervised regarding the

10  use of force and regarding proper procedures for responding to situations involving individuals with

11  mental disabilities or emotional disturbance, including:

12      A.  Failing to provide adequate training and supervision to officers with respect to

13  constitutional limits on the use of force;

14      B.  Failing to provide adequate discipline, training, and supervision to officers with a

15  propensity for violence or a history of violence and unconstitutional actions;

16      C.  Failing to provide adequate training and supervision to officers with respect to the

17  proper procedures to be followed in dealing and interacting with individuals with mental

18  disabilities or emotional disturbance in need of medical or psychological treatment.

19      36.  Before his death, Mr. Watts was a husband, a father, a son, and a sibling. His death has

20  been devastating to his family, including Plaintiffs, who are his next of kin.

21                              **FIRST CAUSE OF ACTION**

22                              **Unreasonable Use of Force**

23                              **(42 U.S.C. § 1983)**

24      **(By Plaintiffs in their capacities as successors-in-interest to Jason Alan Watts)**

25  **(Against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN**

26  **MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100,**

27                              **inclusive)**

28      37.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1-36 of this

                                    14

                                    21-cv-00581-CAB-WVG

1    Complaint, and incorporate the same as if fully set forth herein.

2         38.  Defendants' use of force, including the use of what was ultimately deadly force, was

3    both excessive and unreasonable under the circumstances. Defendants' unjustified attack upon and

4    killing of Mr. Watts deprived him of his rights under the Fourth Amendment. Plaintiffs, as Mr.

5    Watts' successors-in-interest, have the right and standing to assert Mr. Watts' claim for this

6    violation of his Fourth Amendment rights.

7         39.  Defendants' unlawful use of force, including what was ultimately deadly force, caused

8    Mr. Watts extreme pain and suffering, and loss of his life, earning capacity and his relationship

9    with his wife, son, friends, and family. Defendants' actions also deprived Plaintiffs of the life-long

10   love, companionship, support, society, care, and sustenance of Mr. Watts, and they will continue to

11   be so deprived for the remainder of their lives.

12        40.  As a result of their conduct, said Defendants are liable for Mr. Watts' injuries and

13   death, either because they were integral participants in the excessive force, or because they failed to

14   intervene to prevent these violations, or because they permitted a policy and practice of conscious

15   disregard of and reckless indifference to Constitutional rights.

16        41.  The claim against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK

17   MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11

18   through 100, and each of them, as employees of CITY OF CHULA VISTA and its law enforcement

19   entity, CVPD, are based in part upon Plaintiffs' allegations that CVPD's policies or customs were a

20   cause of the injuries and death suffered by Mr. Watts given that these policies failed to provide

21   adequate training and supervision to officers with respect to constitutional limits on the use of

22   force; failed to provide adequate discipline, training, and supervision to officers with a propensity

23   for violence or a history of violence and unconstitutional actions; and failed to provide adequate

24   training and supervision to officers with respect to the proper procedures to be followed in dealing

25   with individuals with mental disabilities or emotional disturbance in need of medical or

26   psychological treatment.

27        42.  As a direct and legal result of Defendants' acts and omissions, Plaintiffs and decedent

28   suffered damages, including, without limitation, loss of enjoyment of life; pain and suffering;

15

21-cv-00581-CAB-WVG

1   emotional distress; funeral expenses; attorneys' fees; costs of suit; other pecuniary losses not yet

2   ascertained; and the loss of Mr. Watts' love, affection, society, and companionship.

3       43.   Plaintiffs are informed and believe and thereon allege that the acts of the individual

4   Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious

5   disregard of Mr. Watts' rights, justifying the awarding of punitive and exemplary damages in an

6   amount to be determined at the time of trial.

7       44.   Plaintiffs bring this claim as successors-in-interest to Mr. Watts, and seek both survival

8   and wrongful death damages under Federal law for the violation of Mr. Watts' rights. Plaintiffs also

9   seek attorneys' fees under this claim.

10   **SECOND CLAIM FOR RELIEF**

11   **Deprivation of Life Without Due Process**

12   **(42 U.S.C. § 1983)**

13   **(By Plaintiffs in their capacities as successors-in-interest to Jason Alan Watts)**

14   **(Against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN**

15   **MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS,**

16   **MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100,**

17   **inclusive)**

18       45.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1- 44 of this

19   Complaint, and incorporate the same as if fully set forth herein.

20       46.   Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN

21   MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each

22   of them, acted within the course and scope of their duties as CVPD officers when they intentionally

23   attacked Mr. Watts, ultimately resulting in his death. Mr. Watts was unarmed and alone. The

24   officers' actions deprived Mr. Watts of his life without due process of law.

25       47.   Defendants CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, and S.

26   O'CONNELL, and DOES 11 through 100, and each of them, acted within the course and scope of

27   their duties as CVPD officers when they failed to accurately evaluate Mr. Watts' condition earlier

28   on October 12, 2018, at the 1190 Myra Avenue encounter referred to above, failed to place him on

21-cv-00581-CAB-WVG

1    a hold pursuant to *Welfare and Institutions Code* § 5150, and failed to otherwise protect him from

2    the effects of his worsening mental breakdown, ultimately resulting in his death. The officers'

3    actions deprived Mr. Watts of his life without due process of law.

4        48.   The deprivation by Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK

5    MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER

6    BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, and

7    each of them, of Mr. Watts' life without due process of law caused him extreme pain and suffering,

8    and loss of life, earning capacity and his relationship with his wife, son, friends, and family.

9    Defendant's actions also deprived Plaintiffs of the life-long love, companionship, support, society,

10   care, and sustenance of Mr. Watts and they will continue to be so deprived for the remainder of

11   their lives.

12       49.   As a result of their conduct, said Defendants are liable for Mr. Watts' injuries, either

13   because they were integral participants in the deprivation of life without due process, or because

14   they failed to intervene to prevent these violations, or because they permitted a policy and practice

15   of conscious disregard of and reckless indifference to Constitutional rights.

16       50.   The claim against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK

17   MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER

18   BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, and

19   each of them, as employees of CITY OF CHULA VISTA and its law enforcement entity, CVPD,

20   are based in part upon Plaintiffs' allegations that CVPD's policies or customs were a cause of the

21   injuries suffered by Mr. Watts given that these policies failed to provide adequate training and

22   supervision to officers with respect to constitutional limits on the use of force; failed to provide

23   adequate discipline, training, and supervision to officers with a propensity for violence or a history

24   of violence and unconstitutional actions; and failed to provide adequate training and supervision to

25   officers with respect to the proper procedures to be followed in dealing with individuals with

26   mental disabilities or emotional disturbance in need of medical or psychological treatment.

27       51.   As a direct and legal result of Defendants' acts and omissions, Plaintiffs have suffered

28   damages, including, without limitation, loss of enjoyment of life; pain and suffering; emotional

17

21-cv-00581-CAB-WVG

1    distress; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained; and the loss of Mr.

2    Watts' love, affection, society, and companionship.

3        52.  Plaintiffs are informed and believe and thereon allege that the acts of the individual

4    Defendants were willful, malicious, intentional, reckless, and/or were done in willful and conscious

5    disregard of Mr. Watts' rights, justifying the awarding of punitive and exemplary damages in an

6    amount to be determined at the time of trial.

7        53.  Plaintiffs bring this claim as successors-in-interest to Mr. Watts, and seek both survival

8    and wrongful death damages under federal law for the violation of Mr. Watts' rights. Plaintiffs also

9    seek attorneys' fees under this claim.

10                              **THIRD CLAIM FOR RELIEF**

11                        **Interference with Parent-Child Relationship**

12                                **(42 U.S.C. § 1983)**

13                        **(By Plaintiffs in their individual capacities)**

14    **(Against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN**

15    **MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS,**

16    **MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100,**

17                                    **inclusive)**

18        54.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1- 53 of this

19    Complaint, and incorporate the same as if fully set forth herein.

20        55.  The interference by Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK

21    MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER

22    BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, and

23    each of them, with the husband-wife and parent-child relationship caused Mr. Watts extreme pain

24    and suffering, and loss of his life, earning capacity and his relationship with his wife, son, friends,

25    and family. Defendants' actions also deprived Plaintiffs of the life-long love, companionship,

26    support, society, care, and sustenance of Mr. Watts, and they will continue to be so deprived for the

27    remainder of their lives.

28        56.  As a result of their conduct, Defendants BRITTANY SCHOFER, THOMAS LUHTA,

                                        18

                                                        21-cv-00581-CAB-WVG

1   MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON,

2   CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11

3   through 100, and each of them, are liable for Mr. Watts' injuries, either because they were integral

4   participants in the interference with the husband-wife and parent-child relationship, or because they

5   failed to intervene to prevent these violations.

6   57.   The claim against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK

7   MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER

8   BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, and

9   each of them, as employees of CITY OF CHULA VISTA and its law enforcement entity, CVPD,

10   are based in part upon Plaintiffs' allegations that CVPD's policies or customs were a cause of the

11   injuries suffered by Mr. Watts given that these policies failed to provide adequate training and

12   supervision to officers with respect to constitutional limits on the use of force; failed to provide

13   adequate discipline, training, and supervision to officers with a propensity for violence or a history

14   of violence and unconstitutional actions; and failed to provide adequate training and supervision to

15   officers with respect to the proper procedures to be followed in dealing with individuals with

16   mental disabilities or emotional disturbance in need of medical or psychological treatment.

17   58.   As a direct and legal result of said Defendants' acts and omissions, Plaintiffs have

18   suffered damages, including, without limitation, loss of enjoyment of life; pain and suffering;

19   emotional distress; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained; and the

20   loss of Mr. Watts' love, affection, society, and companionship.

21   59.   Plaintiffs are informed and believe and thereon allege that the acts of the individual

22   Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious

23   disregard of Mr. Watts' rights, justifying the awarding of punitive and exemplary damages in an

24   amount to be determined at the time of trial.

25   60.   Plaintiffs bring this claim in their individual capacity for wrongful death damages and

26   other remedies available to them under federal law.

27   ///

28

21-cv-00581-CAB-WVG

**FOURTH CLAIM FOR RELIEF**

**Wrongful Death**

**(Cal. Civ. Proc. Code § 377.60)**

**(By Plaintiffs in their individual capacities as heirs of Jason Alan Watts)**

**(Against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, inclusive)**

61.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1- 60 of this Complaint, and incorporate the same as if fully set forth herein.

62.  Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, violently attacked Mr. Watts, ultimately resulting in his death, despite the fact that he was unarmed.

63.  Defendants CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL and DOES 11 through 100, and each of them, failed to accurately evaluate Mr. Watts' condition earlier on October 12, 2018, at the 1190 Myra Avenue encounter referred to above, failed to place him on a hold pursuant to *Welfare and Institutions Code* § 5150, and failed to otherwise protect him from the effects of his worsening mental breakdown, ultimately resulting in his death.

64.  Furthermore, Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL and DOES 11 through 100, and each of them, as officers, agents and employees of CITY OF CHULA VISTA and its duly-constituted law enforcement agency, CVPD, were on notice that Mr. Watts was then suffering from a mental illness, condition, disability, and/or breakdown, and was then experiencing a severe psychotic break and/or other severe psychological distress and was substantially disabled by reason thereof.  As such, when Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH,

21-cv-00581-CAB-WVG

JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, responded to the aforesaid 7-11 store, they should have done so in a manner designed to minimize the possibility of the use of any force.   Instead, said Defendants confronted Mr. Watts with the use of unnecessary and excessive force causing his death.

65.   Given that Diana C. Watts was Mr. Watts' wife, and Odin H. Watts was Mr. Watts' natural son, Plaintiffs are the proper persons to sue for his wrongful death under California state law.

66.   As the surviving wife and son of Mr. Watts, Plaintiffs assert wrongful death actions against Defendants pursuant to C.C.P. §§ 377.60 et seq. This claim is based upon the fact that Defendants' negligent, reckless and wrongful acts and omissions, as alleged herein, were a direct and legal cause of Mr. Watts' death and the resulting damages to Plaintiffs. As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the wrongful conduct, or because they failed to intervene to prevent these violations.

67.   Plaintiffs are informed and believe and thereon allege that the acts of the individual Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious disregard of Mr. Watts' rights, justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

68.   As a direct and legal result of Defendants' acts and omissions, Plaintiffs suffered damages, including, without limitation, loss of enjoyment of life; pain and suffering; emotional distress; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained; and the loss of Mr. Watts' love, affection, society, and companionship.

69.   Plaintiffs bring this claim in their individual capacity for survival and wrongful death damages and other remedies available to them under state law.

///
///
///
///

21-cv-00581-CAB-WVG

**FIFTH CLAIM FOR RELIEF**

**Negligence**

**(By Plaintiffs in their capacities as successors-in-interest to Jason Alan Watts and in their individual capacities)**

**(Against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, inclusive)**

70.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1- 69 of this Complaint, and incorporate the same as if fully set forth herein.

71.  Defendants owed a duty of care to Plaintiffs and Mr. Watts, and were required to use reasonable diligence to ensure that Plaintiffs and Mr. Watts were not unreasonably harmed by Defendants' acts or omissions. Defendants' actions and omissions in breach of such duties of care were negligent and reckless, including but not limited to:

    A.  the failure to properly assess the need to use any force or deadly force against Mr. Watts;

    B.  the negligent tactics and handling of the situation with Mr. Watts;

    C.  the negligent use of force, including ultimately deadly force, against Mr. Watts;

    D.  the failure to properly train, supervise and discipline employees, including the individual Defendants;

    E.  the negligent hiring, retention and assignment of its employees, including the individual defendants; and,

    F.  the negligent failure to properly train CVPD officers in the use of generally accepted police practices on encountering mentally ill individuals in a manner designed to decrease the risk of using unnecessary force or taking a life.

72.  Defendants' conduct caused Mr. Watts extreme pain and suffering, and loss of life and earning capacity. Defendants' actions also deprived Plaintiffs of the life-long love, companionship, support, society, care, and sustenance of their husband and father, and they will continue to be so

22

21-cv-00581-CAB-WVG

1    deprived for the remainder of their lives.

2        73.  As a result of their conduct, Defendants are liable for Mr. Watts' and Plaintiffs'

3    injuries, either because they were integral participants in the negligence, or because they failed to

4    intervene to prevent these violations.

5        74.  Plaintiffs bring this claim as successors-in-interest to Mr. Watts, and seek both survival

6    and wrongful death damages under state law for the violation of Mr. Watts' rights.

7                              **SIXTH CLAIM FOR RELIEF**

8                                    **Wrongful Death**

9                           **(Cal. Civ. Proc. Code § 377.60)**

10       **(By Plaintiffs in their individual capacities as heirs of Jason Alan Watts)**

11   **(Against Defendants COUNTY OF SAN DIEGO, REGENTS OF THE UNIVERSITY OF**

12       **CALIFORNIA (erroneously sued as BOARD OF TRUSTEES OF UNIVERSITY OF**

13             **CALIFORNIA, SAN DIEGO), and DOES 101 through 200, inclusive)**

14       75.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 – 74 of this

15   Complaint, and incorporate the same as if fully set forth herein.

16       76.  In addition to the wrongful acts of Defendants BRITTANY SCHOFER, THOMAS

17   LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON,

18   CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11

19   through 100, inclusive, as described hereinabove, Defendants COUNTY OF SAN DIEGO,

20   REGENTS OF THE UNIVERSITY OF CALIFORNIA (erroneously sued as BOARD OF

21   TRUSTEES OF UNIVERSITY OF CALIFORNIA, SAN DIEGO), and DOES 101 through 200,

22   inclusive, were on notice that Mr. Watts was then suffering from a mental illness, condition,

23   disability, and/or breakdown, and was then experiencing a severe psychotic break and/or other

24   severe psychological distress and was substantially disabled by reason thereof, and/or that Mr.

25   Watts was then suffering from substantial physical injury likely to result in his imminent death,

26   failed to take reasonable and/or appropriate actions to prevent his death, and that said Defendants,

27   and each of them, therefore unreasonably caused and/or contributed to his wrongful death.

28       77.  Given that Diana C. Watts was Mr. Watts' wife, and Odin H. Watts was Mr. Watts'

                                             23

                                                        21-cv-00581-CAB-WVG

1    natural son, Plaintiffs are the proper persons to sue for his wrongful death under California state

2    law.

3         78.  As the surviving wife and son of Mr. Watts, Plaintiffs assert wrongful death actions

4    against Defendants pursuant to C.C.P. §§ 377.60 et seq. This claim is based upon the fact that

5    Defendants' negligent, reckless and wrongful acts and omissions, as alleged herein, were a direct

6    and legal cause of Mr. Watts' death and the resulting damages to Plaintiffs. As a result of their

7    conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants

8    in the wrongful conduct, or because they failed to intervene to prevent these violations.

9         79.  Plaintiffs are informed and believe and thereon allege that the acts of Defendants

10   COUNTY OF SAN DIEGO and DOES 101 through 200, inclusive, were willful, malicious,

11   intentional, reckless and/or were done in willful and conscious disregard of Mr. Watts' rights,

12   justifying the awarding of punitive and exemplary damages in an amount to be determined at the

13   time of trial.

14        80.  As a direct and legal result of Defendants' acts and omissions, Plaintiffs and decedent

15   suffered damages, including, without limitation, loss of enjoyment of life; loss of earnings, loss of

16   support, pain and suffering; emotional distress; attorneys' fees; costs of suit; other pecuniary losses

17   not yet ascertained; and the loss of Mr. Watts' love, affection, society, and companionship.

18        81.  Plaintiffs bring this claim in their individual capacity for survival and wrongful death

19   damages and other remedies available to them under state law.

20                              **SEVENTH CLAIM FOR RELIEF**

21                                      **Negligence**

22   **(By Plaintiffs in their capacities as successors-in-interest to Jason Alan Watts and in their**

23                                 **individual capacities)**

24   **(Against Defendants COUNTY OF SAN DIEGO, REGENTS OF THE UNIVERSITY OF**

25        **CALIFORNIA (erroneously sued as BOARD OF TRUSTEES OF UNIVERSITY OF**

26             **CALIFORNIA, SAN DIEGO), and DOES 101 through 200, inclusive)**

27        82.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1- 81 of this

28   Complaint, and incorporate the same as if fully set forth herein.

                                           24

83.   Defendants owed a duty of care to Plaintiffs and Mr. Watts, and were required to use reasonable diligence to ensure that Plaintiffs and Mr. Watts were not unreasonably harmed by Defendants' acts or omissions. Defendants' actions and omissions were negligent and reckless, including but not limited to:

A.   the failure to properly assess the medical condition of Mr. Watts and to ascertain that he was at risk of imminent death by reason thereof;

B.   the failure to properly and timely secure appropriate medical care and treatment for Mr. Watts so as to reasonably prevent his impending death;

C.   the failure to properly perform appropriate medical care and treatment upon Mr. Watts so as to reasonably prevent his impending death;

D.   the failure to properly train, supervise and discipline employees, including Defendants DOES 101 through 200, inclusive; and,

E.   the negligent hiring, retention and assignment of its employees, including Defendants DOES 101 through 200, inclusive.

84.   Plaintiffs are informed and believe and based thereon allege that at all times during which Mr. Watts was in the custody of COUNTY OF SAN DIEGO, and DOES 101 through 200, inclusive, said Defendants, and each of them, knew or had reason to know that Mr. Watts, a prisoner in custody of said Defendants, was in need of immediate medical care, and that said Defendants, and each of them, failed to take reasonable action to summon such medical care and assure that the same was provided to Mr. Watts. As a direct and proximate result of such failure to take reasonable action to summon medical care, in addition to the wrongful and/or negligent acts of all other Defendants, and each of them, as alleged herein, Mr. Watts died.

85.   In addition to the wrongful acts of Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, inclusive, as described hereinabove, the conduct of Defendants COUNTY OF SAN DIEGO, BOARD OF TRUSTEES OF UNIVERSITY OF CALIFORNIA, SAN DIEGO, and DOES 101 through 200, inclusive, caused and/or contributed to Mr. Watts extreme pain and

21-cv-00581-CAB-WVG

1  suffering, and loss of life. Defendants' actions also deprived Plaintiffs of the life-long love,

2  companionship, support, society, care, and sustenance of their husband and father, and they will

3  continue to be so deprived for the remainder of their lives.

4      86.  As a result of their conduct, Defendants are liable for Mr. Watts' and Plaintiffs'

5  injuries, either because they were integral participants in the negligence, or because they failed to

6  intervene to prevent these violations.

7      87.  Plaintiffs bring this claim as successors-in-interest to Mr. Watts, and seek both survival

8  and wrongful death damages under state law for the violation of Mr. Watts' rights.

9                          **PRAYER FOR RELIEF**

10     WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants,

11  and each of them, as follows:

12     A.   For compensatory damages, including both survival damages and wrongful death

13         damages under federal and state law, and interest, in an amount to be determined at trial;

14     B.   For general damages in an amount to be determined at trial;

15     C.   For exemplary and punitive damages against all Defendants except Defendant

16  REGENTS OF THE UNIVERSITY OF CALIFORNIA (erroneously sued as BOARD OF

17  TRUSTEES OF UNIVERSITY OF CALIFORNIA, SAN DIEGO), in an amount to be

18         proven at trial;

19     D.   For reasonable costs of this suit incurred herein;

20     E.   For attorneys' fees; and,

21     F.   For such further relief as the Court may deem just, proper, and appropriate.

22  DATED: November 29, 2021

23

24  CHRISTOPHER J. OLSEN
    Attorney for Plaintiffs

25  DIANA C. WATTS and
    ODIN H. WATTS, a minor, by and through his

26  Guardian Ad Litem, DIANA C. WATTS

27

28

21-cv-00581-CAB-WVG