CHRISTOPHER J. OLSEN, SBN: 109124
3075 East Thousand Oaks Boulevard
Suite 100
Westlake Village, California 91362
Tel: (805)557-0660  Fax: (805)491-8324
E-mail: cjolaw@aol.com

Attorney for Plaintiffs
DIANA C. WATTS and ODIN H. WATTS, a minor, by and through his Guardian Ad Litem, DIANA C. WATTS

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA C. WATTS and ODIN H. WATTS, a minor, by and through his Guardian Ad Litem, DIANA C. WATTS,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF CHULA VISTA, ROXANA KENNEDY, BRITTANY SCHOFER, individually, THOMAS LUHTA, individually, MARK MEREDITH, individually, JUAN MANIBUSAN, individually, BRYAN JACKSON, individually, GINGER VAN HOUGHTON, individually, CHRISTOPHER BEARSS, individually, MARIO PEREIRA, individually, JOSE AGUAYO, individually, S. O'CONNELL individually, DOES 11 to 200,<br><br>Defendants. | Case No.: 21-cv-00581-CAB-WVG<br><br>**FOURTH AMENDED COMPLAINT FOR DAMAGES**<br><br>1. Unreasonable Use of Deadly Force (42 U.S.C. § 1983);<br>2. Deprivation of Life Without Due Process (42 U.S.C. § 1983);<br>3. Interference with Parent-Child Relationship (42 U.S.C. § 1983);<br>4. Wrongful Death (Cal. Civ. Proc. Code § 377.60);<br>5. Negligence;<br>6. Wrongful Death (Cal. Civ. Proc. Code § 377.60);<br>7. Negligence<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs DIANA C. WATTS and ODIN H. WATTS, a minor by and through his Guardian ad Litem, DIANA C. WATTS, upon information and belief, allege the following:

# INTRODUCTION

1. This case challenges the unjustified killing of Jason Alan Watts ("Mr. Watts"), the husband of Plaintiff DIANA C. WATTS and the father of Plaintiff ODIN H. WATTS, a minor by Defendant officers of the Chula Vista Police Department ("CVPD"). Mr. Watts suffered from significant mental illness, including without limitation ADHD. At the time of the subject incident, Mr. Watts was unarmed and experiencing an episode of severe psychological distress. Prior to engaging in the conduct that ultimately led to Mr. Watts' death, Mr. Watts clearly exhibited to said Defendant officers of the CVPD conduct consistent with severe psychological distress and/or a psychotic break; therefore, said Defendant officers were on notice that Mr. Watts was then suffering from a mental illness, condition, disability, and/or breakdown, and was then experiencing a severe psychotic break and/or other severe psychological distress and was substantially disabled by reason thereof. Plaintiffs allege that said Defendant officers went to the 7-11 store located at or about 403 Third Avenue, Chula Vista, California, after having been called both by 7-11 staff and by Mr. Watts himself, and that Mr. Watts expressed in his 911 call to CVPD, and to said Defendant officers at said 7-11 store, that he was extremely fearful that persons waiting outside the 7-11 store intended to kill him, that he had taken refuge inside said 7-11 store, and persisted in his stated, but factually inaccurate, belief that said persons were still waiting outside the 7-11 store to kill him despite the presence of said Defendant officers. During this encounter, and in a heightened state of fear and mental disability, decedent became even more fearful and ran behind the counter of the 7-11 store as a consequence thereof, in order to protect himself from said perceived killers waiting for him outside. Although Mr. Watts was unarmed and was clearly in a state of profound fear and mental disability, said Defendant officers failed to stabilize the situation and failed to summon officers and/or other professionals trained and experienced in de-escalating situations involving persons suffering from mental illnesses, conditions, disabilities, and/or breakdowns, or to otherwise calm Mr. Watts and obtain his cooperation by non-traumatic means. Instead, despite that Mr. Watts was not a danger to himself or others, said Defendant officers needlessly escalated the situation by proceeding to use pepper spray, tasers, and other violent and harmful techniques and methodologies to violently attack Mr. Watts in order to compel his cooperation, which such violent conduct,

techniques, and methodologies ultimately resulted in Mr. Watts' death several hours later. After so attacking him, the aforesaid Defendant officers of the CVPD thereupon took Mr. Watts into custody. The use of force, including deadly force, against Mr. Watts was unnecessary, unconstitutional and violated clearly established law that would have been known to any reasonable police officer.

## JURISDICTION AND VENUE

2. This case arises under 42 U.S.C. § 1983, The Americans with Disabilities Act, Section 504 of the Rehabilitation Act and California law. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has subject matter jurisdiction over Plaintiffs' supplemental state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (e) in that (1) unlawful actions challenged herein occurred in this Judicial District and (2) all Defendants reside in this Judicial District.

## THE PARTIES

4. Plaintiffs Diana C. Watts and Odin H. Watts, a minor, bring this action individually and as heirs and the sole successors-in-interest to Jason Alan Watts, husband of Plaintiff Diana C. Watts and natural father of Odin H. Watts, a minor ("Mr. Watts"). Plaintiffs assert all survival claims and rights under California law, which survive Mr. Watts' death pursuant to California Code of Civil Procedure §§ 377.30 and 377.60, and any survival claims they may bring under 42 U.S.C. § 1983, The Americans with Disabilities Act and Section 504 of the Rehabilitation Act in their capacities as the successors-in-interest to Mr. Watts. Plaintiffs have served and filed concurrently herewith a declaration pursuant to California *Civil Code* § 377.32 establishing their standing to bring this action.

5. At all relevant times, Mr. Watts was a resident of Chula Vista, County of San Diego, State of California. Plaintiff Diana C. Watts is currently a resident of the State of California. Plaintiff Odin H. Watts, a minor, is currently a resident of the State of Nebraska.

6. Plaintiffs are informed and believe and thereon allege that at all relevant times Defendant CITY OF CHULA VISTA was a duly chartered and established public municipal entity

1  organized under the laws of the State of California, and within the meaning of Title II of the ADA
2  and has received federal financial assistance within the meaning of Section 504 of the
3  Rehabilitation Act, and was located within in the County of San Diego, State of California.
4  Plaintiffs are further informed and believe and thereon allege that at all relevant times Defendant
5  CITY OF CHULA VISTA owned, operated, and maintained the Chula Vista Police Department
6  ("CVPD") as the duly-constituted law enforcement agency in and for the CITY OF CHULA
7  VISTA, and that at all relevant time CVPD acted in all respects in accordance with and pursuant to
8  all applicable rules and policies promulgated by the CITY OF CHULA VISTA, and with the
9  express and/or implied authorization, consent, and ratification of CITY OF CHULA VISTA.

10      7.   Plaintiffs are informed and believe and thereon allege that at all relevant times
11 Defendant BRITTANY SCHOFER (hereinafter "SCHOFER") (formerly sued as "DOE 1") was a
12 duly authorized officer and employee of the CVPD, was at all relevant times acting under the
13 authority thereof, was at all relevant times acting under the color of law within the curse and scope
14 of her respective duties as a CVPD officer, and with the complete authority and ratification of the
15 CVPD.

16      8.   Plaintiffs are informed and believe and thereon allege that at all relevant times
17 Defendant THOMAS LUHTA (hereinafter "LUHTA") (formerly sued as "DOE 2") was a duly
18 authorized officer and employee of the CVPD, was at all relevant times acting under the authority
19 thereof, was at all relevant times acting under the color of law within the curse and scope of his
20 respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

21      9.   Plaintiffs are informed and believe and thereon allege that at all relevant times
22 Defendant MARK MEREDITH (hereinafter "MEREDITH") (formerly sued as "DOE 3") was a
23 duly authorized officer and employee of the CVPD holding the rank and responsibilities of
24 Sergeant, was at all relevant times acting under the authority thereof, was at all relevant times
25 acting under the color of law within the curse and scope of his respective duties as a CVPD officer,
26 and with the complete authority and ratification of the CVPD.

27      10.  Plaintiffs are informed and believe and thereon allege that at all relevant times
28 Defendant JUAN MANIBUSAN (hereinafter "MANIBUSAN") (formerly sued as "DOE 4") was a

duly authorized officer and employee of the CVPD, was at all relevant times acting under the authority thereof, was at all relevant times acting under the color of law within the curse and scope of his respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

11. Plaintiffs are informed and believe and thereon allege that at all relevant times Defendant BRYAN JACKSON (hereinafter "JACKSON") (formerly sued as "DOE 5") was a duly authorized officer and employee of the CVPD holding the rank and responsibilities of Agent, was at all relevant times acting under the authority thereof, was at all relevant times acting under the color of law within the curse and scope of his respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

12. Plaintiffs are informed and believe and thereon allege that at all relevant times Defendant GINGER VAN HOUGHTON (hereinafter "VAN HOUGHTON") (formerly sued as "DOE 6") was a duly authorized officer and employee of the CVPD, was at all relevant times acting under the authority thereof, was at all relevant times acting under the color of law within the curse and scope of her respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

13. Plaintiffs are informed and believe and thereon allege that at all relevant times Defendant CHRISTOPHER BEARSS (hereinafter "BEARSS") (formerly sued as "DOE 7") was a duly authorized officer and employee of the CVPD, was at all relevant times acting under the authority thereof, was at all relevant times acting under the color of law within the curse and scope of his respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

14. Plaintiffs are informed and believe and thereon allege that at all relevant times Defendant MARIO PEREIRA (hereinafter "PEREIRA") (formerly sued as "DOE 8") was a duly authorized officer and employee of the CVPD, was at all relevant times acting under the authority thereof, was at all relevant times acting under the color of law within the curse and scope of his respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

15. Plaintiffs are informed and believe and thereon allege that at all relevant times

1  Defendant JOSE AGUAYO (hereinafter "AGUAYO") (formerly sued as "DOE 9") was a duly
2  authorized officer and employee of the CVPD, was at all relevant times acting under the authority
3  thereof, was at all relevant times acting under the color of law within the curse and scope of his
4  respective duties as a CVPD officer, and with the complete authority and ratification of the CVPD.

5    16. Plaintiffs are informed and believe and thereon allege that at all relevant times
6  Defendant S. O'CONNELL (hereinafter "O'CONNELL") (formerly sued as "DOE 10") was a duly
7  authorized employee and specialty clinician of the CVPD assigned to its Psychiatric Emergency
8  Response Team ("PERT"), was at all relevant times acting under the authority thereof, was at all
9  relevant times acting under the color of law within the curse and scope of her respective duties as a
10 specialty clinician within the PERT unit of CVPD, and with the complete authority and ratification
11 of the CVPD.

12   17. Plaintiffs are informed and believe and thereon allege that at all relevant times
13 Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN
14 MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS,
15 MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and Defendants DOES 11 through 100,
16 inclusive, were duly authorized officers, sergeants, agents, supervisors, and/or managers of the
17 CVPD and agents and employees of the CITY OF CHULA VISTA, and were directly involved in
18 escalating the encounters that resulted in the death of Mr. Watts. Plaintiffs are informed and believe
19 and thereon allege that at all relevant times said Defendants acted with the complete authority and
20 ratification of CITY OF CHULA VISTA and CVPD.

21   18. The true names of Defendants DOES 11 through 200, inclusive, are unknown to
22 Plaintiffs at this time. Plaintiffs will seek leave to amend this complaint to show the true names and
23 capacities of these Defendants when they have been ascertained. Plaintiffs are informed and believe
24 and thereon allege that each of the fictitiously-named Defendants is responsible for some part of the
25 conduct, liabilities and damages alleged herein.

26   19. Plaintiffs are informed and believe and thereon allege that each Defendant is, and at all
27 times mentioned, was the agent, employee, representative, successor and/or assignee of each other
28 Defendant. Each Defendant, in doing the acts, or in omitting to act as alleged in this Complaint,

1 was acting within the scope of his or her actual or apparent authority, or the alleged acts and
2 omissions of each Defendant agent subsequently were ratified and adopted by each other Defendant
3 as principal. Plaintiffs are informed and believe and thereon allege that each of the individual
4 Defendants were in some way responsible for the constitutional violations and torts alleged in this
5 Complaint.

6     20. Plaintiffs are informed and believe and thereon allege that all Defendants, at all times
7 relevant to the allegations herein, acted under the color of state law. Each non-government entity
8 Defendant is sued in his or her individual capacity only. Liability under California law for all
9 government employees is based upon, among other things, California Civil Code Sections 43, 51,
10 51.7, 52, 52.1, 54.1, 377.30, and 377.60; Government Code Section 815.2; and Penal Code
11 Sections 149, 240 and/or 242. Liability under federal law for all government entity employees is
12 based upon 42 U.S.C. § 1983. Plaintiffs timely filed tort claims with CITY OF CHULA VISTA,
13 COUNTY OF SAN DIEGO, and UNIVERSITY OF CALIFORNIA, SAN DIEGO and have
14 complied with the requirements of the California Tort Claims Act.

15     21. In committing the acts alleged in this Complaint, Defendants BRITTANY SCHOFER,
16 THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN
17 HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL,
18 and DOES 11 through 100, inclusive, and each of them, acted knowingly, maliciously, and with
19 reckless or callous disregard for the constitutional rights of Plaintiffs and of Mr. Watts, justifying
20 an award of punitive damages under Federal and California law against each individual defendant.

21 <center>**FACTUAL ALLEGATIONS**</center>

22     22. According to the records of CVPD, on or about October 12, 2018, at approximately
23 8:38 AM, in Chula Vista, California, officers of the CVPD were called to the residence of the aunt
24 of the decedent, Jason Alan Watts, located at 1190 Myra Avenue, Chula Vista, California 91911,
25 who reported that Watts had come to her residence, was "not making sense," that he was "making
26 irrational comments," and that she was scared of him. Watts had further reportedly stated that he
27 was being pursued by "the cartel," who wanted to kill him, that he was filthy and unkempt, and that
28 he looked like he had not slept in five days. Defendants BEARSS and PEREIRA initially

responded to this call, and after speaking with Watts and his aunt, called for assistance from SVPD's PERT unit, to which Defendants AGUAYO and PERT Clinician O'CONNELL responded and further interviewed Watts. PERT Clinician O'CONNELL ultimately evaluated Watts as not meeting criteria for a hold pursuant to California *Welfare and Institutions Cod*e § 5150. Defendants BEARSS, PEREIRA, AGUAYO, and O'CONNELL left the 1190 Myra Avenue location without taking Watts into custody or having him transported for further medical/mental health evaluations to determine whether he would benefit from a Section 5150 hold, and simply left Watts to his own devices. This decision would lead to Watts' condition and behavior worsening throughout the day, and ultimately to his death.

23.   On or about October 12, 2018, at approximately 11:30 PM, in Chula Vista, California, Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON and DOES 11 through 100, and each of them, officers of the CVPD, encountered the decedent, Jason Alan Watts, at a 7-11 store located at or about 403 Third Avenue, Chula Vista, California. At said time, Mr. Watts was then suffering from a severe mental illness, condition, disability, and/or breakdown, in addition to, apparently, having ingested controlled substance(s) that further altered his consciousness and ability to accurately perceive events around him. In fact, Mr. Watts had repeatedly entered and exited the 7-11 store without incident, becoming more and more confused and fearful, and believing that persons with guns were pursuing him and lying in wait with the intent of killing him. At one point, Mr. Watts requested of the 7-11 clerk that he be allowed to use the business' telephone, whereupon he himself called CVPD asking for help and protection from these perceived but nonexistent threats, which were delusions arising from the profound mental breakdown that he was experiencing. As Mr. Watts became increasing afraid and paranoid, the 7-11 clerk became concerned and called CVPD. Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON and DOES 11 through 100, and each of them, were dispatched to the scene, along with another CVPD Officer, Andrea Mayorga, who apparently observed the unfolding scene from outside the 7-11 and attempted to gather information from homeless individuals congregating nearby and one or more individuals at a nearby hotel which Mr.

1   Watts had previously entered. Whereas CVPD had dispatched Defendant Clinician O'CONNELL
2   to the encounter with Mr. Watts at the 1190 Myra Avenue address earlier that same day, no
3   clinician or other member of CVPD's PERT team was dispatched to the 7-11 at any point during
4   this profound breakdown experienced by Mr. Watts. Instead, Defendants BRITTANY SCHOFER
5   and THOMAS LUHTA, approached Mr. Watts in an aggressive and intimidating manner, which was
6   clearly perceived by Mr. Watts as a grave threat to his life and safety. In his clearly confused and
7   disoriented state, as Defendant THOMAS LUHTA approached Mr. Watts near the door to the 7-11,
8   Mr. Watts yelled "Check the freezers! Check the freezers!" then ran at full speed back into the 7-11
9   and behind the counter where 7-11 employees worked, clearly taking refuge from a perceived but
10  nonexistent threat. Defendant THOMAS LUHTA would later describe Mr. Watts as 'acting
11  strangely,' and that he had "red bloodshot eyes, dried blood in his mouth, and his face was filthy,"
12  and that he 'just stared blankly.' Despite that Mr. Watts was clearly in the midst of a profound
13  delusion and mental breakdown, was extremely fearful, paranoid, agitated, confused, and
14  disoriented, Defendant THOMAS LUHTA began issuing commands to Mr. Watts which he did not
15  follow, whereupon Defendant THOMAS LUHTA drew his firearm, and Defendant BRITTANY
16  SCHOFER approached and drew her taser.  Defendants Sergeant MARK MEREDITH, Officer
17  JUAN MANIBUSAN, Agent BRYAN JACKSON, Officer GINGER VAN HOUGHTON and DOES 11
18  through 100, and each of them, arrived and joined in attempting to violently and physically subdue
19  Mr. Watts. Over the next several minutes, Mr. Watts was repeatedly shot by said Defendants and
20  electrocuted with four separate tasers, was stuck with fists, batons, sprayed in the face with pepper
21  spray, all causing him to begin to vomit uncontrollably, and then once being swarmed and
22  physically subdued from all movement by a throng of 4-6 officers, was placed in a physical
23  restraint system known as a "WRAP," and a device known as a "spit bag" was placed over his
24  mouth and nose, in which he had no freedom of movement and in which his breathing was
25  restricted. Mr. Watts' fear, anxiety, and paranoia increased exponentially.
26        24.  At no point during the encounter at 7-11 between Mr. Watts and Defendants
27  BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN
28  JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, did any

officer or employee of CVPD ever make any attempt to ascertain Mr. Watts' mental status, nor did any officer or employee of CVPD ever summon officers and/or other professionals trained and experienced in de-escalating situations involving persons suffering from mental illnesses, conditions, disabilities, and/or breakdowns – such as one of more members of CVPD's PERT unit that had encountered, evaluated, and inaccurately determined that Mr. Watts did not meet the criteria for a Section 5150 hold – or to otherwise obtain Mr. Watts' cooperation by less traumatic means. Defendants Sergeant MARK MEREDITH, Officer JUAN MANIBUSAN, Agent BRYAN JACKSON, Officer GINGER VAN HOUGHTON and DOES 11 through 100, and each of them, thereupon took Mr. Watts into custody.

25.   In fact, had Defendants BEARSS, PEREIRA, AGUAYO, and O'CONNELL correctly assessed Mr. Watts' downward-spiraling condition earlier the same day after his family had called on CVPD for help and placed him on a Section 5150 hold, rather than abandoning him to his own devices in his worsening state, the disastrous encounter at 7-11 would never have occurred and Mr. Watts would likely be alive today.

26.   Plaintiffs are informed and believe and based thereon allege that during said encounter at 7-11, Defendants Sergeant MARK MEREDITH and Agent BRYAN JACKSON had a conversation wherein both agreed that the decedent, Mr. Watts, appeared to be suffering from "excited delirium." Excited delirium is a condition well-known to law enforcement and medical personnel to be a complex neuropsychiatric syndrome that is characterized by disturbances in consciousness, orientation, memory, thought, perception, and behavior, including agitation, aggression, and acute distress resulting from or more structural and/or physiological abnormalities directly or indirectly affecting the brain, and is associated with high rates of sudden death, often in the pre-hospital care setting. Plaintiffs are informed and believe and based thereon allege that the awareness that Mr. Watts was suffering from excited delirium was communicated and/or otherwise known to Defendants BRITTANY SCHOFER, THOMAS LUHTA, JUAN MANIBUSAN, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them. Despite recognizing what would ultimately cause Mr. Watts to die several hours later, not one of said Defendants acted to minimize the stress experienced by Mr. Watts, to seek and obtain medical care specifically to address and

control this advancing condition, and instead treated Mr. Watts like an ordinary criminal who was simply being uncooperative. Defendant THOMAS LUHTA would later state to interviewers concerning the incident "In my mind, I was thinking why didn't you just do what we told you to do? It didn't have to get to the point was at had he complied with the orders," evidencing said Defendants' commitment to the false notion that a severely mentally-ill man in the midst of a profound mental breakdown and suffering from obvious, severe paranoia and delusions could understand and rationally comply with commands.

27. Defendants Officer MARK MEREDITH, Officer JUAN MANIBUSAN, Agent BRYAN JACKSON, Officer GINGER VAN HOUGHTON and DOES 11 through 100, and each of them, called paramedics to the scene to evaluate the decedent after he continued to exhibit the effects of the aforesaid mental illness, condition, disability, and/or breakdown following his arrest, who ultimately transported the decedent in the early hours of October 13, 2018, to Paradise Valley Hospital, where he was evaluated and deemed suitable for incarceration. Defendants Officer MARK MEREDITH, Officer JUAN MANIBUSAN, Agent BRYAN JACKSON, Officer GINGER VAN HOUGHTON and DOES 11 through 100, and each of them, then transported the decedent to the COUNTY OF SAN DIEGO Men's Central Detention Facility, operated by Defendant COUNTY OF SAN DIEGO through its duly-authorized law enforcement agency, the San Diego County Sheriff's Department. While in the process of being booked into the COUNTY OF SAN DIEGO Men's Central Detention Facility, Mr. Watts' medical condition began to further deteriorate rapidly, and, and he was subsequently transported by ambulance to the University of California at San Diego (UCSD) Medical Center. Once at the UCSD Medical Center, Mr. Watts suffered additional medical complications and vital system shutdown associated with his excited delirium, and he was pronounced dead at or about 12:21 P.M. on October 13, 2018.

28. Plaintiffs are informed and believe and thereon allege that prior to violently attacking Mr. Watts as aforesaid, Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, were aware that that Mr. Watts was quite obviously then suffering from a mental illness, condition, disability, and/or breakdown, and was then experiencing a severe psychotic break

1 and/or other severe psychological distress and was substantially disabled by reason thereof, yet did
2 not conduct the aforesaid encounter with Mr. Watts any differently than a criminal suspect.  Mr.
3 Watts was not in possession of any weapon at any time during said encounter. At all times,
4 Defendants were unaware or deliberately did not consider that they could seek any professional
5 assistance and had no policies, procedures, or training on contacting a mental health professional
6 when dealing with an individual in psychological distress.

7      29. Instead, Defendants needlessly escalated the situation by proceeding to use pepper
8 spray, tasers, fists, batons, and other violent and harmful techniques and methodologies to violently
9 attack Mr. Watts in order to compel his cooperation, which such violent conduct, techniques, and
10 methodologies only served to further escalate the severity of Mr. Watts' mental distress, confusion,
11 and excited delirium, and ultimately resulted in his death several hours later.

12      30. The lack by Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH,
13 JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100,
14 and each of them, of having received from CVPD training in the protocols, procedures and policies
15 regarding encountering individuals with mental disabilities or emotional disturbance directly
16 contributed to and impacted their failure to plan or create any less extreme and/or de-escalating
17 course of action prior to attacking Mr. Watts.

18      31. At the time of the aforesaid attack, Mr. Watts was unarmed and suffering through an
19 episode of extreme psychological distress and mental illness. The use of what was ultimately
20 deadly force in this case was unreasonable and excessive given that Defendants BRITTANY
21 SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER
22 VAN HOUGHTON, and DOES 11 through 100, and each of them, knew that Mr. Watts was
23 obviously suffering through an episode of extreme psychological distress, mental illness, confusion,
24 and delusion, as Mr. Watts had himself called CVPD for help based on his fear that persons were
25 waiting outside the 7-11 store to kill him, and that the presence thereat of said Defendants as armed,
26 uniformed police officers did not itself persuade him that he was safe from the deadly but
27 nonexistent harm he feared by reason of his severe mental illness, condition, disability, breakdown,
28 and other severe psychological distress, and his substantially disability by reason thereof.

Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, failed to: use proper procedures in responding to a situation involving a mentally or emotionally disturbed person; seek any assistance, before or during the incident, from mental health officials or a crisis intervention team, wait for back up, and/or call or wait for the arrival of Mr. Watts' family, relatives and/or friends who could have helped to defuse the situation. Instead, the officers unreasonably escalated the level of tension and acted violently without cause, resorting to unnecessary and excessive force to subdue Mr. Watts and used ultimately deadly force, which was excessive and unreasonable under the circumstances.

32. Plaintiffs allege that the aforesaid officers and employees of CVPD, including without limitation Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, were negligently and inadequately trained, hired, retained and/or supervised regarding the use of force and regarding proper procedures for responding to situations involving individuals with mental disabilities or emotional disturbance, including:

    A.    Failing to provide adequate training and supervision to officers with respect to constitutional limits on the use of force;

    B.    Failing to provide adequate discipline, training, and supervision to officers with a propensity for violence or a history of violence and unconstitutional actions;

    C.    Failing to provide adequate training and supervision to officers with respect to the proper procedures to be followed in dealing and interacting with individuals with mental disabilities or emotional disturbance in need of medical or psychological treatment.

33. Before his death, Mr. Watts was a husband, a father, a son, and a sibling. His death has been devastating to his family, including Plaintiffs, who are his next of kin.

///
///
///
///

# FIRST CAUSE OF ACTION

**Unreasonable Use of Force**

**(42 U.S.C. § 1983)**

**(By Plaintiffs in their capacities as successors-in-interest to Jason Alan Watts)**

**(Against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, inclusive)**

34. Plaintiffs repeat and reallege each and every allegation in paragraphs 1-33 of this Complaint, and incorporate the same as if fully set forth herein.

35. Defendants' use of force, including the use of what was ultimately deadly force, was both excessive and unreasonable under the circumstances. Defendants' unjustified attack upon and killing of Mr. Watts deprived him of his rights under the Fourth Amendment. Plaintiffs, as Mr. Watts' successors-in-interest, have the right and standing to assert Mr. Watts' claim for this violation of his Fourth Amendment rights.

36. Defendants' unlawful use of force, including what was ultimately deadly force, caused Mr. Watts extreme pain and suffering, and loss of his life, earning capacity and his relationship with his wife, son, friends, and family. Defendants' actions also deprived Plaintiffs of the life-long love, companionship, support, society, care, and sustenance of Mr. Watts, and they will continue to be so deprived for the remainder of their lives.

37. As a result of their conduct, said Defendants are liable for Mr. Watts' injuries and death, either because they were integral participants in the excessive force, or because they failed to intervene to prevent these violations, or because they permitted a policy and practice of conscious disregard of and reckless indifference to Constitutional rights.

38. The claim against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, as employees of CITY OF CHULA VISTA and its law enforcement entity, CVPD, are based in part upon Plaintiffs' allegations that said Defendants, and each of them, failed to follow proper and generally accepted procedures in dealing with individuals with mental

disabilities or emotional disturbances in need of medical or psychological treatment, such as Mr. Watts, and instead used excessive force under the circumstances when proper intervention and the use of a lesser degree of force would not have needlessly accelerated the tension of the circumstances and exacerbated Mr. Watts' mental disabilities and emotional disturbances, leading to his death.

39. As a direct and legal result of Defendants' acts and omissions, Plaintiffs and decedent suffered damages, including, without limitation, loss of enjoyment of life; pain and suffering; emotional distress; funeral expenses; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained; and the loss of Mr. Watts' love, affection, society, and companionship.

40. Plaintiffs are informed and believe and thereon allege that the acts of the individual Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious disregard of Mr. Watts' rights, justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

41. Plaintiffs bring this claim as successors-in-interest to Mr. Watts, and seek both survival and wrongful death damages under Federal law for the violation of Mr. Watts' rights. Plaintiffs also seek attorneys' fees under this claim.

**SECOND CLAIM FOR RELIEF**

**Interference with Parent-Child Relationship**

**(42 U.S.C. § 1983)**

**(By Plaintiff ODIN H. WATTS, a minor, by and through his Guardian Ad Litem, DIANA C. WATTS)**

**(Against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, inclusive)**

42. Plaintiffs repeat and reallege each and every allegation in paragraphs 1- 50 of this Complaint, and incorporate the same as if fully set forth herein.

43. The interference by Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK

MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, and each of them, parent-child relationship caused Mr. Watts extreme pain and suffering, and loss of his life, earning capacity and his relationship with his wife, son, friends, and family. Defendants' actions also deprived Plaintiff of the life-long love, companionship, support, society, care, and sustenance of Mr. Watts, and he will continue to be so deprived for the remainder of his life.

44. As a result of their conduct, Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, and each of them, are liable for Mr. Watts' injuries, either because they were integral participants in the interference with the parent-child relationship, or because they failed to intervene to prevent these violations.

45. The claim against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, and each of them, as employees of CITY OF CHULA VISTA and its law enforcement entity, CVPD, are based in part upon Plaintiffs' allegations that said Defendants, and each of them, failed to follow proper and generally accepted procedures in dealing with individuals with mental disabilities or emotional disturbances in need of medical or psychological treatment, such as Mr. Watts, and instead used excessive force under the circumstances when proper intervention and the use of a lesser degree of force would not have needlessly accelerated the tension of the circumstances and exacerbated Mr. Watts' mental disabilities and emotional disturbances, leading to his death, thereby wrongfully interfering with the parent-child relationship between Mr. Watts and his sone, Plaintiff ODIN H. WATTS, a minor.

46. As a direct and legal result of said Defendants' acts and omissions, Plaintiff ODIN H. WATTS, a minor, by and through his Guardian Ad Litem, DIANA C. WATTS, has suffered damages, including, without limitation, loss of enjoyment of life; pain and suffering; emotional distress; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained; and the loss of Mr.

Watts' love, affection, society, and companionship.

47. Plaintiff is informed and believes and thereon alleges that the acts of the individual Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious disregard of Mr. Watts' rights, justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

48. Plaintiffs bring this claim in their individual and/or representative capacities for wrongful death damages and other remedies available to Plaintiff ODIN H. WATTS, a minor, by and through his Guardian Ad Litem, DIANA C. WATTS, under federal law.

### THIRD CLAIM FOR RELIEF

**Wrongful Death**

**(Cal. Civ. Proc. Code § 377.60)**

**(By Plaintiffs in their individual capacities as heirs of Jason Alan Watts)**

**(Against Defendants CITY OF CHULA VISTA, BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, inclusive)**

49. Plaintiffs repeat and reallege each and every allegation in paragraphs 1- 57 of this Complaint, and incorporate the same as if fully set forth herein.

50. Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, violently attacked Mr. Watts, ultimately resulting in his death, despite the fact that he was unarmed. Said officers engaged in said wrongful actions individually and in their capacities as employees of Defendant CITY OF CHULA VISTA and CVPD.

51. Defendants CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL and DOES 11 through 100, and each of them, failed to accurately evaluate Mr. Watts' condition earlier on October 12, 2018, at the 1190 Myra Avenue encounter referred to above, failed to place him on a hold pursuant to *Welfare and Institutions Code* § 5150, and failed to otherwise protect him from the effects of his worsening mental breakdown, ultimately resulting in

1  his death. Said officers engaged in said wrongful actions individually and in their capacities as employees of Defendant CITY OF CHULA VISTA and CVPD.

52. Furthermore, Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL and DOES 11 through 100, and each of them, as officers, agents and employees of CITY OF CHULA VISTA and its duly-constituted law enforcement agency, CVPD, were on notice that Mr. Watts was then suffering from a mental illness, condition, disability, and/or breakdown, and was then experiencing a severe psychotic break and/or other severe psychological distress and was substantially disabled by reason thereof.  As such, when Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, and DOES 11 through 100, and each of them, responded to the aforesaid 7-11 store, they should have done so in a manner designed to minimize the possibility of the use of any force.   Instead, said Defendants confronted Mr. Watts with the use of unnecessary and excessive force causing his death. Said officers engaged in said wrongful actions individually and in their capacities as employees of Defendant CITY OF CHULA VISTA and CVPD.

53. Given that Diana C. Watts was Mr. Watts' wife, and Odin H. Watts was Mr. Watts' natural son, Plaintiffs are the proper persons to sue for his wrongful death under California state law.

54. As the surviving wife and son of Mr. Watts, Plaintiffs assert wrongful death actions against Defendants pursuant to C.C.P. §§ 377.60 et seq. This claim is based upon the fact that Defendants' negligent, reckless and wrongful acts and omissions, as alleged herein, were a direct and legal cause of Mr. Watts' death and the resulting damages to Plaintiffs. As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the wrongful conduct, or because they failed to intervene to prevent these violations.

55. As a direct and legal result of Defendants' acts and omissions, Plaintiffs suffered damages, including without limitation, actual damages according to proof, attorneys' fees; costs of suit; other pecuniary losses not yet ascertained.

56. Plaintiffs bring this claim in their individual capacity for survival and wrongful death damages and other remedies available to them under state law.

## FOURTH CLAIM FOR RELIEF

### Negligence

**(By Plaintiffs in their capacities as successors-in-interest to Jason Alan Watts)**

**(Against Defendants BRITTANY SCHOFER, THOMAS LUHTA, MARK MEREDITH, JUAN MANIBUSAN, BRYAN JACKSON, GINGER VAN HOUGHTON, CHRISTOPHER BEARSS, MARIO PEREIRA, JOSE AGUAYO, S. O'CONNELL, and DOES 11 through 100, inclusive)**

57. Plaintiffs repeat and reallege each and every allegation in paragraphs 1- 65 of this Complaint, and incorporate the same as if fully set forth herein.

58. Defendants owed a duty of care to Plaintiffs and Mr. Watts, and were required to use reasonable diligence to ensure that Plaintiffs and Mr. Watts were not unreasonably harmed by Defendants' acts or omissions. Defendants' actions and omissions in breach of such duties of care were negligent and reckless, including but not limited to:

    A.   the failure to properly assess the need to use any force or deadly force against Mr. Watts;

    B.   the negligent tactics and handling of the situation with Mr. Watts;

    C.   the negligent use of force, including ultimately deadly force, against Mr. Watts;

    D.   the failure to properly train, supervise and discipline employees, including the individual Defendants;

    E.   the negligent hiring, retention and assignment of its employees, including the individual defendants; and,

    F.   the negligent failure to properly train CVPD officers in the use of generally accepted police practices on encountering mentally ill individuals in a manner designed to decrease the risk of using unnecessary force or taking a life.

59. Defendants' conduct caused Mr. Watts extreme pain and suffering, and loss of life and earning capacity. Defendants' actions also deprived Plaintiffs of the life-long love, companionship,

support, society, care, and sustenance of their husband and father, and they will continue to be so deprived for the remainder of their lives.

60. As a result of their conduct, Defendants are liable for Mr. Watts' and Plaintiffs' injuries, either because they were integral participants in the negligence, or because they failed to intervene to prevent these violations.

61. Plaintiffs bring this claim as successors-in-interest to Mr. Watts, and seek both survival and wrongful death damages under state law for the violation of Mr. Watts' rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants, and each of them, as follows:

    A.    For compensatory damages, including both survival damages and wrongful death damages under federal and state law, and interest, in an amount to be determined at trial;

    B.    For general damages in an amount to be determined at trial;

    C.    For exemplary and punitive damages, in an amount to be proven at trial;

    D.    For reasonable costs of this suit incurred herein;

    E.    For attorneys' fees; and,

    F.    For such further relief as the Court may deem just, proper, and appropriate.

DATED: April 17, 2023              LAW OFFICE OF CHRISTOPHER J. OLSEN

s/Christopher J. Olsen
CHRISTOPHER J. OLSEN, ESQ.
Attorney for Plaintiffs
DIANA C. WATTS and
ODIN H. WATTS, a minor, by and through his
Guardian Ad Litem, DIANA C. WATTS